Thomas J. Judge, Sr., as Director of the Medical Professional Liability Catastrophe Loss Fund of the Commonwealth of Pennsylvania, Plaintiff *v.* Allentown and Sacred Heart Hospital Center and The Hartford Insurance Group, Defendants.

Argued June 3, 1985, before Judges ROGERS and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Harvey Bartle, III, Dechert, Price & Rhoads,* with him, *Robert W. Waeger* and *Don A. Leatherman,* for plaintiff.

*Frank A. Baker, III, Butz, Hudders, Tallman, Stevens & Johnson,* with him, *James B. Martin,* for defendant, Allentown and Sacred Heart Hospital Center.

*Robert H. Holland,* with him, *Barbara L. Hollenbach* and *Gary S. Figore, Holland, Taylor and Sorrentino,* for defendant, Hartford Insurance Group.

OPINION BY JUDGE ROGERS, July 24, 1985:

This is a suit in assumpsit brought in this Court by Thomas J. Judge, Director of the Medical Professional Liability Catastrophe Loss Fund (Fund), seeking judgment against the Allentown and Sacred Heart Hospital Center (Hospital Center or defendant) and the Hartford Insurance Group (Hartford or defendent), its insurance carrier, for money paid by the plaintiff Fund which the defendants allegedly should have paid in settlement of a medical malpractice claim. The defendants filed preliminary objections in the nature of demurrers, one of which was to the point that the Fund, an executive agency of the Commonwealth, had not been given the statutory power to bring a suit of this nature. In *Judge v. Allentown and Sacred Heart Hospital Center,* 78 Pa. Commonwealth Ct. 373, 467 A.2d 899 (1983), we sustained the demurrers based exclusively on the conclusion that the Fund had no statutory authority to sue. The Pennsylvania Supreme Court in *Judge v. Allentown and Sacred Heart Hospital Center,* Pa. , A.2d (1985), held that the Fund did have the power to sue, reversed our order and remanded for further proceedings consistent with its opinion. Neither we nor the Supreme Court addressed the defendants' other demurrer to the effect that (1) the Fund had not alleged facts constituting a cause of action for recovery on the theorization of indemnity or equitable subrogation and (2) that the Fund, as a matter of law, was not entitled to recover the delay damages it claimed.[1] The Fund urges that the Supreme Court ruled on the merits of the remaining preliminary ob-

---

[1] The defendants also pleaded a preliminary objection in the nature of a motion to strike and a preliminary objection in the nature of a petition raising a question of service. In their brief filed in the present matter, the defendants say they "have elected not to pursue" these objections and we will overrule them.

jections in the nature of demurrers in their favor by the last sentence of the opinion of that Court: "We find that the Commonwealth Court erred in holding that the appellant's complaint failed to state a cause of action." Since the remaining preliminary objections were not subjects considered in the Court's opinion, we believe it to be our duty to consider and dispose of them.

The Fund is an executive agency of the Commonwealth of Pennsylvania established pursuant to Article VII of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §§1301.101-1301.1006. It is designed to provide excess liability coverage for health care providers by satisfying all awards, judgments and settlements arising from malpractice actions to the extent that the provider's liability exceeds the provider's basic coverage insurance. Basic coverage insurance for a health care provider other than a hospital is $100,000 per occurrence and $300,000 per annual aggregate; for hospitals the basic coverage insurance is $100,000 per occurrence and $1,000,000 per annual aggregate.[2]

We learn from the amended complaint that in February, 1977, Eugene Issermoyer entered the Hospital Center for minor surgery. Mr. Issermoyer suffered adverse effects from anesthesia administered at the Hospital Center and sustained permanent paralysis of both legs and his left arm. Mr. and Mrs. Issermoyer thereafter filed a malpractice claim with the Arbitration Panels for Health Care naming as defendants the Hospital Center and two of its staff physicians. After lengthy discovery proceedings and settlement negotiations the Issermoyers' claim was settled on behalf of the Fund and the doctors for $1,-

---

[2] The amounts of basic coverage for all health care providers have since been increased pursuant to Section 701 of the Act, 40 P.S. §1301.701(a)(1)(i).

503,935. The doctors' basic coverage insurance carrier contributed $200,000 to the settlement for its insureds. As part of the settlement agreement releases were executed in favor of all defendants including the Hospital Center. The Hospital Center and its carrier Hartford, however, declined to concede any liability in the matter and made no contribution to the settlement. The Fund provided $1,303,935, the remainder needed for the settlement.

The Fund's amended complaint contains three counts: In Counts One and Three, brought against the Hospital Center and Hartford respectively for indemnity, the Fund describes in great detail the allegedly negligent acts of the Hospital Center and its two physicians in treating Mr. Issermoyer and alleges that those acts united to cause the injuries suffered by Mr. Issermoyer. The Fund also alleges that, as the excess liability carrier, it was secondarily liable to the Issermoyers and that by making payment in complete satisfaction of the claim, the Fund acquired a right of indemnity against the Hospital Center and Hartford.

In Count Two, against both the Hospital Center and Hartford for equitable subrogation, the Fund alleges that the Hospital Center and Hartford failed to make a good faith investigation of the Hospital Center's potential liability for Mr. Issermoyer's injuries or of the Fund's potential exposure to excess liability; that the Hospital Center and Hartford failed to make a good faith offer to settle in view of the magnitude of the potential liability of the Hospital Center and the Fund; and that because of their refusal to concede exposure to liability and make a good faith offer of settlement, the Fund was required to account for the Hospital Center's negligent acts.

The defendants filed the preliminary objections in the nature of demurrers now before us.

In ruling on a demurrer, all well-pleaded facts in the complaint and all inferences reasonably deducted therefrom, must be accepted as true. *Gekas v. Shapp,* 469 Pa. 1, 364 A.2d 691 (1976). A demurrer will be sustained only when it appears, with certainty, that the law permits no recovery under the allegations pleaded, *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974); any doubts in the determination should be resolved by overruling the objection. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970).

The defendants first contend that Counts I and III of the Fund's amended complaint do not state a cause of action for indemnity because: (1) they contain no allegations that the Fund paid out any money on behalf of the Hospital Center; and (2) the Fund acted as a volunteer in making the settlement in the Hospital Center's behalf.

Indemnity has been defined as an obligation resting upon one party to make good a loss or damage another has incurred for the former's benefit. *Potts v. Dow Chemical Co.,* 272 Pa. Superior Ct. 323, 415 A.2d 1220 (1979); 18 P.L.E. Indemnity §1. The right of indemnity inures to the benefit of a party who, without active fault on its part, has been compelled by some legal obligation to pay damages occasioned by the negligence of another. *Burbage v. Boiler Engineering & Supply Co., Inc.,* 433 Pa. 319, 249 A.2d 563 (1969). "The duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other." *Mixter v. Mack Trucks, Inc.,* 224 Pa. Superior Ct. 313, 317, 308 A.2d 139, 141-142 (1973) (quoting W. Prosser, The Law of Torts 33 (4th ed. 1971)).

We believe that the Fund has stated a cause of action for recovery under the principle of indemnity.

In its amended complaint the Fund alleges that it reasonably believed that the value of the Issermoyers' claim against the Hospital Center and the two doctors exceeded the policy limits of their individual basic insurance coverage; that the Fund paid a settlement and obtained a release from liability in favor of the Hospital Center; that the settlement relieved the Fund, to which the defendant Hospital Center is a contributor and beneficiary, of a potential exposure to payment of $3,000,000; and that if the Fund's coverage limits were exceeded, it relieved the Hospital Center and the doctors of the obligation of responding to that excess. Clearly the Fund has pleaded that it paid money on the Hospital Center's behalf.

Moreover, we believe that in paying the Hospital Center's share of the settlement the Fund was not acting as a volunteer. A volunteer is one who having no interest to protect and without a moral or legal obligation to pay, discharges the debt of another. *Dominski v. Garrett,* 276 Pa. Superior Ct. 18, 419 A.2d 73 (1980).

Section 102 of the Health Care Services Malpractice Act, 40 P.S. §1301.102, the Act by which the Fund was established, expresses the Legislature's intention to "make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation." Thus, the Fund has, in the words of *Burbage,* "some legal obligation" to the Issermoyers, the Hospital Center, the two physician defendants and to the public to effectuate a fair, reasonable and prompt settlement of the claim allegedly caused by the negligence of the Hospital Center.

We believe that the defendants' demurrer to Count II of the complaint in which the Fund claimed a right

to recovery by the doctrine of equitable subrogation is also ineffective. Subrogation is an equitable doctrine "adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it," *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 354, 180 A.2d 414, 421 (1962) (quoting from *Potoczny v. Vallejo*, 170 Pa. Superior Ct. 377, 380-81, 85 A.2d 675, 677 (1952)), and is generally applicable where one party pays out of its own funds a debt or obligation that is primarily payable from the funds of another. *Anderson v. Greenville Borough*, 442 Pa. 11, 273 A.2d 512 (1971). The doctrine, however, will not be invoked to protect mere volunteers. *Beck v. Beiter*, 146 Pa. Superior Ct. 114, 22 A.2d 90 (1941).

The defendants argue that the Fund is not entitled to recover on the basis of the doctrine of subrogation because it acted as a volunteer in paying their share of the settlement. For the reasons already stated, the Fund did not act as a volunteer in paying the settlement. The Fund, as noted, alleges that by settling the Issermoyers' claim, it protected its own interests as well as the interests of the Hospital Center and the two treating physicians and that it has thereby discharged its obligation stated in the chartering statute to effect prompt determinations of the medical malpractice claims and the payment of fair and reasonable compensation. We agree.

In its claim for damages the Fund asserts its right to a judgment in the amount of $100,000 plus attorney's fees and damages for delay calculated pursuant to Pa. R.C.P. 238. The defendants have correctly pointed out that the cited rule applies only to tort actions. The Fund responds that, under the circumstances, it is entitled to an award of prejudgment interest. This controversy may be resolved by further pleading and we will sustain the defendants' objection

with leave to the Fund to amend its complaint in this regard.

The defendants' preliminary objections in the nature of demurrers to Counts I, II and III of the Fund's amended complaint, their petition raising a question of service and their motion to strike are overruled.

The defendants' preliminary objection in the nature of a demurrer to the Fund's claim for damages for delay pursuant to Pa. R.C.P. 238 is sustained with leave to the Fund to amend its complaint in this regard within twenty days of notice of our order.

### ORDER

AND Now, this 24th day of July, 1985, it is ORDERED:

That the defendants' preliminary objections in the nature of demurrers to Counts I, II, and III of the plaintiff's amended-complaint, their petition raising a question of service and their motion to strike are overruled.

The defendants' preliminary objection in the nature of a demurrer to the plaintiff's claim for damages for delay pursuant to Pa. R.C.P. 238 is sustained with leave to the plaintiff to amend the complaint in this regard within twenty days.

Judge PALLADINO did not participate in the decision in this case.