510 A.2d 377

Kathleen Bryson, Administratrix of the Estate of Timothy Bryson, Deceased, Appellant *v.* Martin Solomon et al., Appellees.

Argued April 11, 1986, before Judges BARRY and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Kevin P. Kelly,* with him, *James P. Cousounis, Pechner, Dorfman, Wolffe, Rounick & Cabot,* for appellant.

*Andrew M. Rosen,* with him, *Martin Horowitz,* for appellee, School District of Philadelphia.

*Norman G. Prajzner,* Chief Assistant City Solicitor, with him, *Armando A. Pandola, Jr.,* Chief Deputy in

Charge of Claims, and *Barbara W. Mather,* City Solicitor, for appellee, City of Philadelphia.

OPINION BY JUDGE COLINS, May 30, 1986:

On June 19, 1984, Timothy Bryson, a minor, was fatally injured by an automobile as he attempted to cross the intersection of State Road and Arendell Avenue in Philadelphia. Having just stepped from a bus operated by Southeastern Pennsylvania Transportation Authority (SEPTA), Timothy was crossing the intersection in order to board a school bus operated by SEPTA, pursuant to a contract with the Board of Education of the School District of Philadelphia (Board). Kathleen Bryson (appellant), as Administratrix of the Estate of the decedent, filed a Complaint for Wrongful Death and Survival in the Court of Common Pleas of Philadelphia County against Martin Solomon (the driver of the automobile), SEPTA, City of Philadelphia (City), and the Board. Both the City and the Board raised Preliminary Objections in the nature of a Demurrer to the Complaint, averring immunity to suit under the provisions of Section 8541 of the Judicial Code (Code), 42 Pa. C. S. §8541. The Court of Common Pleas sustained the preliminary objections, and dismissed appellant's Complaint as to the City and the Board.[1] Appellant has appealed the dismissal to this Court.

The sole issue before this Court is whether the City and the Board are immune from suit under the Code. In ruling on a demurrer, all well-pled allegations in the Complaint and all inferences reasonably deduced therefrom, must be accepted as true. *Judge v. Allentown and Sacred Heart Hospital,* 90 Pa. Commonwealth Ct. 520, 496 A.2d 92 (1985). Our scope of review is limited to whether it appears with certainty that the law permits no recovery if the facts are as pled. *Id.*

---

[1] Solomon and SEPTA remain as defendants.

Section 8541 of the Code, 42 Pa. C. S. §8541, provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." A local agency is: "A government unit other than the Commonwealth government. The term includes an intermediate unit." Section 8501 of the Code, 42 Pa. C. S. §8501. Both the City and the Board are local agencies. *See Knudsen v. Delaware County Regional Water Quality Authority,* 84 Pa. Commonwealth Ct. 36, 478 A.2d 533 (1984). Therefore, both the City and the Board are immune from suit unless one of the exceptions to immunity provided by Section 8542 of the Code, 42 Pa. C. S. §8542, is applicable.

Section 8542 of the Code provides, in pertinent part:

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, 'negligent acts' shall not include acts or conduct which

constitutes a crime, actual fraud, actual malice or willful misconduct.

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(4) Trees, traffic controls and street lighting.—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

As to the City, we conclude that appellant's Complaint does not state a cause of action either at common law or as created by statute for which damages would be recoverable; therefore, we will affirm the trial court. As to the Board, we conclude that appellant's Complaint does not contain averments which would bring this case within the ambit of the exception provided by Section 8542(b)(4) of the Code, 42 Pa. C. S. §8542(b)(4), and we likewise affirm the trial court.

## THE CITY

Appellant's Complaint against the City generally avers that the City was negligent in failing to erect appropriate traffic controls[2] at the intersection where the

---

[2] Specifically, appellant's Complaint avers "[t]he lack of school crossing guards or other appropriately attired traffic control guards

accident occurred. In order to prove negligence, the appellant must prove, *inter alia,* that the alleged tortfeasor had a duty toward the injured party. *O'Neill v. Batchelor Brothers, Inc. Funeral Homes,* 421 Pa. 413, 219 A.2d 682 (1966).

Because there was no common law duty to erect traffic controls, we must examine whether a duty has been created by statute. This particular accident occurred when the decedent was crossing State Road in Philadelphia. State Road is a designated State Highway.[3] Section 1758-201 of the State Highway Act, 36 P.S. §1758-201, provides:

> The following public streets or sections thereof, including bridges thereon, in cities of the first class are adopted by the Commonwealth as State highways to be taken over upon the terms and conditions and subject to the limitations hereinafter contained in Article II, and shall thereafter be maintained, constructed, reconstructed and resurfaced in the same manner, with like power and authority as provided by the laws of the Commonwealth applicable to State highways, upon the terms and conditions and subject to the limitations as hereinafter provided in Article II.

Section 1758-203 of the State Highway Act, 36 P.S. §1758-203, further provides: "This act is not intended and shall not be construed: (1) To place upon the Commonwealth any duty to regulate traffic or police the

or other traffic control systems, signs, or devices created a dangerous condition of the traffic control system. . . ." For the purposes of this opinion, we shall utilize the term "traffic control" so as to include all of the above.

[3] This is undisputed by the parties. *See* §1758-202 of the State Highway Act of 1961 (State Highway Act), Act of September 18, 1961, P.L. 1389, 36 P.S. §1758-202.

streets herein taken over by the Commonwealth but such duty shall be and remain the obligation of the cities." Philadelphia is a first-class city;[4] therefore, it is responsible for the regulation of traffic upon State Road.

Because Philadelphia is governed by the Philadelphia Home Rule Charter, its duties regarding the regulation of traffic are delineated within such Charter. Specifically, the Home Rule Charter provides:

> The Department of Streets shall have the power and its duty shall be to perform the following functions:
>
> . . . .
>
> (d) Traffice [sic] Engineering. The Department shall make such regulations governing traffic and parking on City streets and on the roads and drives in Fairmount Park as shall be authorized by statute or ordinance, establish and determine the type and location of any and all signs, signals, markings and devices for regulating and controlling vehicular and pedestrian traffic as shall be authorized by and not inconsistent with statute or ordinance, install, repair, maintain and operate them, collect and compile traffic data, prepare engineering studies and surveys in regard to vehicular and pedestrian traffic, prepare analyses of traffic accidents for determining their causes and means for their prevention, and institute and conduct an educational and public information program for the purpose of promoting the safety and unimpeded movement of vehicular and pedestrian traffic.

---

[4] *See* Section 101 of an act dividing the cities of this state into four classes with respect to their population, and designating the mode of ascertaining and changing the classification thereof, in accordance therewith, Act of June 25, 1895, P.L. 275, *as amended*, 53 P.S. §101.

351 Pa. Code §5.5-500(d). We do not find any mandatory duty to erect traffic controls in the above section. It clearly states that the Department of Streets shall establish and determine the type and location of traffic controls. The fact that the Department can "determine" the location of traffic controls conclusively shows that the Department's duty to erect such is discretionary. There is no duty on the part of the City to exercise its discretion, and consequently there is no statutory cause of action.[5] Therefore, the City is immune from suit under the Code.

## THE BOARD

As regards the Board, the appellant likewise alleges negligence, specifically that the Board negligently failed in its duty to provide an appropriately controlled school bus loading zone. Section 3345(h) of the Vehicle Code, 75 Pa. C. S. §3345(h), specifically provides:

> (h) Loading zones for school children.—Every school district transporting school children by school bus shall establish and maintain school bus loading zones at or near all schools to or from which school children are transported and shall establish school bus loading zones along the highways traversed by school buses in accordance with regulations promulgated by the department.

The standards promulgated by the Department of Transportation provide:

---

[5] The case of *Mistecka v. Commonwealth*, 46 Pa. Commonwealth Ct. 267, 408 A.2d 159 (1979), cited by appellant for the proposition that a failure to erect traffic controls is negligence, is inapposite. The precise issue of whether a duty existed was never raised in *Mistecka*; moreover, *Mistecka* was a suit against the Commonwealth, rather than a local agency, under the provisions of Section 8522 of the Code, 42 Pa. C. S. §8522. These provisions are different than the provisions of Section 8542 of the Code, 42 Pa. C. S. §8542.

(a) Off-roadway loading zones. A school bus loading zone should be established off the roadway whenever possible, provided all of the following items are satisfied:

(1) There is an area of sufficient width to safely accommodate both the bus and students.

(2) All students to be received or discharged either reside or walk to or from the loading zone on the same side of the roadway as the loading zone or are afforded the protection of a traffic signal, stop sign, uniformed police officer, or other appropriately attired person— such as a school crossing guard—authorized to direct, control, or regulate traffic.

67 Pa. Code §104.3. Appellant's Complaint clearly states that the Board failed in its statutorily mandated duty; therefore, the appellant has pled a cause of action in negligence, and we must consider whether or not appellant's Complaint falls within the ambit of those acts which may impose liability upon a local agency.

The only exception to governmental immunity remotely applicable to the instant case is that exception provided by Section 8542(b) of the Code, quoted above, for "a dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency. . . ." In this case there was no dangerous condition *of* traffic controls, because there were no traffic controls. The dangerous condition in this case, if any, was allegedly created by a lack of appropriate traffic controls, which is not a part of the aforementioned section. Unfortunate as it may seem, the fact that the Board did not comply with legislatively enacted duties is immaterial when the clear language of the Code provides the Board with immunity from suit. *Aberant v.*

*Wilkes-Barre Area School District,* 89 Pa. Commonwealth Ct. 516, 492 A.2d 1186 (1985). Even though this hampers the legislative intent to protect school children, the unambiguous language of a statute is not to be disregarded under the pretext of pursuing its spirit. *Shestack v. General Braddock Area School District,* 63 Pa. Commonwealth Ct. 204, 437 A.2d 1059 (1981). Therefore, pursuant to legislative mandate, we reluctantly find the Board immune from suit, and likewise affirm the trial court's sustaining the preliminary objections as to the Board.

ORDER

AND NOW, May 30, 1986, the order of the Court of Common Pleas of Philadelphia County, No. 4209 March Term, 1985, dated July 3, 1985, is hereby affirmed.