779 A.2d 1143

Loretta MULLIGAN and Thomas Mulligan, her husband and Mark Gurevitz

v.

Serverino PICZON, M.D.

Appeal of Commonwealth of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund.

Supreme Court of Pennsylvania.

Argued Dec. 5, 2000.

Decided Sept. 7, 2001.

Guy Anthony Donatelli, Westchester, Kenneth J. Serafin, Harrisburg, Naomi A. Plakins, Doylestown, William H. Lamb, Westchester, for Medical Professional Fund.

Lise Luborsky, Philadelphia, for Amicus Curiae Pennsylvania Property and Cas. Ins. Guar. Ass'n.

Michael Perry, for Community Medical Center.

David R. Bahl, Williamsport, for Serverino Piczon, M.D.

Steve W. Day, Newtown Square, for Access/AIG.

Joseph P. Lenahan, Scranton, for Mulligan's & Mark Gurevi.

John Thomas McLane, Scranton, for Amicus Curiae PA Trial Lawyers Assoc.

## ORDER

PER CURIAM.

The Court being evenly divided, the Order of the Commonwealth Court is affirmed.

Justice ZAPPALA files an Opinion in Support of Reversal in which Chief Justice FLAHERTY and Justice NIGRO join.

Justice SAYLOR files an Opinion in Support of Affirmance in which Justice CAPPY and CASTILLE join.

Justice NIGRO files an Opinion in Support of Reversal.

Justice NEWMAN did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF REVERSAL

ZAPPALA, Justice.

This is an appeal by the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) from the Commonwealth Court's order affirming the order of the Lackawanna County Common Pleas Court that imposed a fine of one dollar for each day that a designated representative did not attend the trial of the medical malpractice action in the underlying matter of *Mulligan v. Piczon, et al.*, docketed at 95 Civil 1039. For the following reasons, I would reverse the order of the Commonwealth Court.

This matter arises from the medical malpractice action initiated by Loretta Mulligan, her husband Thomas Mulligan, and Mark Gurevitz against Dr. Severino Piczon and Community Medical Center for alleged negligence in performing orthopedic surgery. Dr. Piczon and Community Medical Center held primary professional liability coverage in the amount of $200,000.00 each. The CAT Fund provided malpractice coverage for both defendants pursuant to the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, No. 111, as amended, 40 P.S. § 1301.101 et seq. As participating health care providers in the CAT Fund, each was entitled to up to $1,000,000.00 of coverage under the Act. The Community Medical Center also had excess insurance coverage through AIG Insurance.

Beginning on October 2, 1998, the trial court conducted several settlement conferences. At the settlement conference held on October 30, 1998, it was agreed that defense counsel

would view a videotape depicting a mock trial of the malpractice action that had been prepared by the plaintiffs. On November 16, 1998, a status conference was held by telephone, and the matter was re-listed for conference on December 7, 1998. The conference was later postponed until January 7, 1999 because of delay in the circulation of the videotape.

On January 7, 1999, the trial court conducted another settlement conference to discuss the insurance carriers' respective positions after reviewing the videotape. The CAT Fund was unprepared to discuss the videotape as scheduled, however, because its representatives had failed to view it before the conference.[1] After the conference, the trial court issued an attachment order dated January 7, 1999, to all trial counsel for the period from March 15, 1999 to April 30, 1999, during which trial of the malpractice action was scheduled.

On January 15, 1999, the trial court issued a second attachment order, stating that the CAT Fund

is hereby ordered to immediately name their attorney designee who is to be attached to observe and oversee trial progress in the above-captioned matter from March 15, 1999 continuously until conclusion which is estimated to be May 7, 1999, a period of approximately seven weeks. The Fund shall designate their representative within ten (10) days of the date of this Order and so notify the Court.

The CAT Fund failed to notify the trial court of the name of its designated representative within 10 days as directed.

It was not until February 22, 1999, more than one month after the order was issued, that the CAT Fund communicated its reasons for failing to comply with the order. On that date, Robert W. Waeger, the CAT Fund's Deputy Director, sent a letter by facsimile to the trial court stating that the CAT Fund's Office of Chief Counsel had made a number of efforts to locate authority that would support an order directing an employee of the CAT Fund to attend the trial. The letter further stated, "[t]herefore please accept this as notice that a

1. The CAT Fund was permitted to participate in the settlement conference by telephone.

representative of the Fund will not be attending the trial of the Mulligan case, which is scheduled to begin on March 15, 1999." The letter indicated that Jo Ann Dittman, a claims attorney who was an authorized CAT Fund representative, would be available by telephone. The CAT Fund did not file any motion or request seeking reconsideration of the trial court's order or that the order be vacated.

On February 25, 1999, the trial court issued a Rule to Show Cause why Waeger and Dittman should not be held in contempt for a violation of the attachment order by virtue of the letter of February 22, 1999. The rule directed that a hearing, if necessary, would be held on March 5, 1999.

On the day of the hearing, the CAT Fund filed a response to the rule to show cause entitled "Preliminary Objections of Non Parties to the Court's Jurisdiction and Objection to Sua Sponte Rule to Show Cause Why a Contempt Citation Should Not Be Entered." The CAT Fund asserted that the trial court did not have the authority to issue the attachment order because (1) it lacked jurisdiction over the CAT Fund and its representatives, (2) the trial had not begun, and (3) neither Pa. R.C.P. No. 212 nor the Lackawanna County local rules authorized the trial court to order attachment or to issue a contempt order.

The trial court conducted further settlement negotiations and heard argument on the CAT Fund's response to the rule to show cause. On March 12, 1999, the trial court entered an order making the rule absolute. The order provided that the CAT Fund would be subject to a fine of $1.00 per day for each day that a designated representative did not attend the trial of the malpractice action, commencing on March 15, 1999. The fine was to be made payable to the Lackawanna County Law Library. The order further stayed imposition of any fine pending appeal, while specifying that the other proceedings in the malpractice action were not stayed. The trial court also entered a separate order certifying that the order making the rule absolute involved a controlling question of law as to which there was substantial ground for difference of opinion and that

immediate appeal could materially advance the ultimate termination of the matter. 42 Pa.C.S. § 702(b).[2]

On appeal, the Commonwealth Court affirmed the trial court's order. The Commonwealth Court determined that a trial court has the authority to compel attendance of persons over whom it has personal jurisdiction at pre-trial settlement conferences.[3] It further determined that a trial court may order attendance at other stages of the proceedings upon reasonable notice. The court noted that Lackawanna County R.C.P. No. 212 requires that the attorneys for each party appear at the pre-trial conference, and that, if the attorney does not have complete settlement authority, the party or a person with full settlement authority must accompany the attorney to the pre-trial conference or be available by telephone during the conference. The rule was found to authorize the trial court to exercise jurisdiction over non-parties, including the CAT Fund.

The court found that the trial court's jurisdiction necessarily extended into the trial phase in order to facilitate settlement during the course of the trial. The court reasoned that in the absence of a CAT Fund representative with full authority to settle the case, settlement negotiations would be frustrated. The court concluded that it was not an abuse of the trial court's discretion to order a CAT Fund representative to be present at trial when the CAT Fund had exclusive control over the settlement negotiations.

**2.** The underlying medical malpractice action was subsequently settled; however, the issue raised in this appeal is not moot since it is capable of repetition and may evade review. *In Re J.M.*, 556 Pa. 63, 726 A.2d 1041 (1999).

I note that a Petition for Review and Emergency Relief was filed on behalf of John Reed, the CAT Fund's director, after the Philadelphia County Common Pleas Court entered an order directing him to attend a trial in an unrelated medical malpractice action. On March 30, 2000, we entered a per curiam order granting the petitioner's request to prohibit the common pleas court from ordering his appearance at trial until the appeal in *Mulligan* was completed. *Reed v. Court of Common Pleas of Philadelphia County*, 27 E.D. Misc. Dkt.2000.

**3.** The court indicated that the issue of subject matter jurisdiction was not in contention and, therefore, did not need to be addressed in resolving the CAT Fund's challenge to the trial court's authority.

We granted the CAT Fund's petition for allowance of appeal from the Commonwealth Court's order to address the issue of whether a trial court has the authority to compel the CAT Fund's attendance at the trial of a medical malpractice action.[4]

The CAT Fund challenges the trial court's authority to enter an order directing that it designate a representative to attend the trial. It asserts that although a trial court has the authority to conduct pre-trial settlement proceedings, this authority does not extend to it the jurisdiction to punish non-litigants for their failure to reach an agreement. The CAT Fund asserts that it has been granted the power to evaluate a case and adjust a medical malpractice claim by the General Assembly, and that if the authority of the trial court is extended so that the CAT Fund can be punished for discharging its executive function, this would violate the separation of powers of the government branches.

The Appellees respond that the common pleas courts of the Commonwealth, which have subject matter jurisdiction over medical malpractice actions, also have personal jurisdiction over persons or entities that have settlement authority with respect to the parties involved in the litigation. They assert that the common pleas courts have the power to order attendance of such persons or their designated representatives at pre-trial settlement conferences and other proceedings pursuant to their authority by the adoption of local rules and/or issuance of court orders with appropriate notice. Further, they contend that the separation of powers doctrine was not violated by the trial court's attachment order, which was designed to effectuate a reasonable settlement, or by sanctioning the CAT Fund for a violation of the order.

The Health Care Services Malpractice Act was enacted

to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort

---

4. As the issue involves a question of law, our scope of review is plenary. *Phillips v. A-Best Products Co.*, 542 Pa. 124, 665 A.2d 1167 (1995).

or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation.

40 P.S. § 1301.102. The Act "mandates the creation of a fund which provides excess professional liability coverage for health care providers to the extent that their liability for malpractice exceeds their individually purchased insurance' coverage, which all health care providers are required to obtain." *King v. Boettcher*, 537 Pa. 574, 645 A.2d 219, 221 (Pa.994).

The CAT Fund, which was established pursuant to the Act, is an executive agency of the Commonwealth. *Judge v. Allentown and Sacred Heart Hospital Center*, 506 Pa. 636, 487 A.2d 817 (1985), on remand, 90 Pa.Cmwlth. 520, 496 A.2d 92 (1985). The CAT Fund is administered by a director who "is authorized to defend, litigate, settle or compromise any claim payable by the fund." 40 P.S. § 1301.702(f).

When a basic coverage insurance carrier or self-insured provider reasonably believes that the value of a claim exceeds the coverage or self-insurance plan, notice thereof is to be given to the CAT Fund's director. 40 P.S. § 1301.702(c). The basic coverage insurance carrier or self-insured provider is responsible for providing a defense to the claim, including defense of the CAT Fund, except as specifically provided for under the Act. The director may join in the defense and be represented by counsel when the described notice has been given. 40 P.S. § 1301.702(d). "In short, the CAT Fund is a statutorily mandated fund which serves as a secondary insurer in medical malpractice cases." *King*, 645 A.2d at 221–22.

Although the Commonwealth Court framed its discussion of the CAT Fund's challenge to the trial court's order in this case as one involving jurisdiction, the primary thrust of the CAT Fund's argument is that the trial court lacked the power to enter the attachment order. In *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 408 Pa. 169, 182 A.2d 682, 686 (1962), we stated;

Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

It is undisputed that the trial court had jurisdiction to adjudicate the medical malpractice claim and that personal jurisdiction existed over the parties.

The malpractice claim against Dr. Piczon and the Community Medical Center triggered the statutory obligation of the CAT Fund as the secondary insurer. The parties to the claim, and their representatives, were subject to the procedural rules governing the adjudication of the claim. As the secondary insurer for the defendant-parties, the CAT Fund was also subject to the Pennsylvania Rules of Civil Procedure.

The following exchange between the trial judge and counsel for the CAT Fund during the hearing on the rule to show cause demonstrates that the CAT Fund was not asserting that it was not governed by the Rules of Civil Procedure, but that the trial court's order exceeded its authority thereunder.

THE COURT: How could I force them to come to a pretrial conference but I can't force them to come to a trial? Where's my authority to force them to come to a pretrial conference? Are you telling me that whole rule is invalid?

[COUNSEL]: No, your Honor. What this rule provides for you is limited authority to force or compel a nonparty to do something, limited authority, and you have to operate within those limitations, all due respect. Those limitations are exceeded when you do not accept their telephonic presence, and you require them, upon pain of contempt of Court, to be here.

THE COURT: Those rules would be rendered moot if I had an unsatisfactory telephonic conference, and I didn't require it. I had absolutely no authority to do anything or to settle any cases.

[COUNSEL]: Your Honor, I do not believe the Court has the power to enforce a settlement at all costs or to say that a case will be settled.

THE COURT: You're right.

R. 85a.

I note also that the Health Care Services Malpractice Act as initially enacted contained provisions purporting to establish procedures governing medical malpractice claims, discovery, expert testimony and pre-trial conferences. With respect to pre-trial conferences, formerly codified at 40 P.S. § 1301.826–A, the provisions of the Act substantially restated the rule governing pre-trial conferences promulgated by the Pennsylvania Supreme Court. The sections of the Act relating to procedures were suspended by our order dated January 17, 1997 in accordance with Article V, § 10(c) of the Pennsylvania Constitution.[5]

The resolution of the issue of whether a trial court is authorized to compel the attendance of the CAT Fund at trial must be made then by reference to Pa. R.C.P. No. 212.3, which provides:

(a) In any action the court, of its own motion or on motion of any party, may direct the attorneys for the parties to appear for a conference to consider

(1) The simplification of the issues;

---

**5.** Article V, § 10(c) provides:

. . . . .

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

(2) The necessity or desirability of amendments to the pleadings;

(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

(4) The limitation of the number of expert witnesses;

(5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;

(6) Such other matters as may aid in the disposition of the action.

(b) The court may make an order reciting the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and limiting the issues for trial to those not disposed of by admissions or agreements of the attorneys. Such order when entered shall control the subsequent course of the action unless modified at the trial to prevent manifest injustice.

(c) The court may establish by rule a pre-trial list on which actions may be placed for consideration as above provided, and may either confine the list to jury actions or to non-jury actions, or extend it to all actions.

The local rule governing pre-trial procedure and conference, which was implemented by the Lackawanna County Common Pleas Court, further provided in relevant part that

(f) At least one attorney for each party shall appear and conduct the pre-trial conference except in the case of parties appearing pro se. At least one attorney for each of the parties who is fully familiar with the case and who has the complete authority to settle the cases shall appear for each party. If an attorney does not have complete settlement authority, the party or a person with full settlement authority shall accompany the attorney to the pre-trial conference or shall be available by telephone during the pre-trial conference. Counsel are mandated to alert their clients to

this requirement and are responsible for having available in person or by telephone a person with full settlement authority for the party whom counsel represents.

Lackawanna County Local Rule of Civil Procedure No. 212(f).

The rules of procedure specifically authorize the common pleas courts to address matters that may aid in the disposition of an action. Settlement negotiations are a significant tool of the judicial system that aids in the disposition of an action. The strong and historical public policy of encouraging settlements was discussed extensively in *Muhammad v. Strassburger, et al.*, 526 Pa. 541, 587 A.2d 1346 (1991), reh'g denied, 528 Pa. 345, 598 A.2d 27 (1991); cert. denied 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991), wherein we stated:

Numerous commentators have addressed the problem of overcrowded courts and the importance of settlements to the efficient flow of justice. A fundament of those articles is that settlement of civil litigation is critical to the courts' management of caseloads. Without settlement of cases, litigants would have to wait years, if not decades, for their day in court.

*Id.* at 1350 (footnotes omitted).

In this case, however, the attachment order issued by the trial court was broader than an order directing the parties and those with settlement authority to participate in supervised settlement negotiations. The trial court's order compelled the CAT Fund's designated representative to attend the trial itself. Although the trial court reasonably believed that observance of the trial would provide the CAT Fund with information relevant to settlement, the parties and those representatives with settlement authority would not have been engaged in settlement negotiations during the presentation of the case. Thus, while the trial court had the power to compel the attendance of the CAT Fund's designated representative for settlement negotiations, I find that the trial court erred by

requiring a representative to observe the trial proceedings.[6]

I would reverse the order of the Commonwealth Court.

Chief Justice FLAHERTY and Justice NIGRO join this opinion.

## *OPINION IN SUPPORT OF AFFIRMANCE*

SAYLOR, Justice.

I join the opinion authored by Mr. Justice Zappala in holding that the CAT Fund should not be attached to trials for the general purpose of fostering settlements. Because of the number and complexity of trials in which the CAT Fund is interested as a consequence of its statutory role as an excess insurance provider in the medical malpractice arena, it is my belief that our approval of the attachment practice would impose an undue and unworkable burden upon the administrative scheme. However, rather than concluding that the common pleas court lacked the power to enter its attachment order, I would simply disapprove subsequent attachments pursuant to an exercise of this Court's supervisory powers. *See* PA. CONST . art. V, § 10; 42 Pa.C.S. § 502. Further, and in any event, I would uphold the trial court's imposition of monetary sanctions upon the CAT Fund for its contempt of such order.

It is fundamental that courts possess inherent power to enforce compliance, and to punish non-compliance, with their lawful orders. *See Commonwealth v. Marcone,* 487 Pa. 572, 579, 410 A.2d 759, 763 (1980); *In re Martorano,* 464 Pa. 66, 77, 346 A.2d 22, 27 (1975); *Brocker v. Brocker,* 429 Pa. 513, 519, 241 A.2d 336, 338 (1968). In particular applications, the precise contours of the judicial contempt power are sometimes difficult to discern. Critical distinctions, frequently subtle and fine, are drawn on the basis of both the character of the underlying order in terms of whether it reflects an exercise of

6. In light of this disposition, I would not address the CAT Fund's assertion that the trial court's order was in violation of the separation of powers doctrine.

the court's power or authority, and the nature of the subsequent finding of contempt as civil or criminal.[1]

The CAT Fund, however, did not lodge its appeal to vindicate its rights and interests according to any such distinctions applicable in this case; rather, it sought this Court's intervention to avoid the systemic impact of future attachments. Although in its appellate brief the CAT Fund challenged, in summary fashion, the trial court's power to find it in contempt of an order which exceeded the trial court's authority, *see* Brief for Appellant at 24 n. 9, at oral argument, counsel for the CAT Fund candidly and commendably acknowledged that the CAT Fund ignored the trial court's order; the proper course would have been to seek a stay and challenge the order through the courts; and, accordingly, the CAT Fund was not pressing its opposition to the sanction imposed. Thus, the CAT Fund appropriately acceded to the trial court's reasonable and largely symbolic one-dollar per day fine, to be paid to the Lackawanna County Law Library, thereby clearing tech-

1. For example, it has been held that, while a defendant may be punished for criminal contempt for disobeying an order later set aside on appeal, the same is not true of civil contempt. *See United States v. United Mine Workers of America*, 330 U.S. 258, 294–95, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947); *Cliett v. Hammonds*, 305 F.2d 565, 570 (5th Cir.1962). Distinctions in terms of power, authority, and error are drawn in the following decisions: *Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n*, 453 Pa. 43, 50, 308 A.2d 98 (1973) (noting that a court must possess both personal and subject matter jurisdiction if its orders are to be enforceable in contempt proceedings); *Howat v. Kansas*, 258 U.S. 181, 190, 42 S.Ct. 277, 281, 66 L.Ed. 550 (1922) (stating that an injunction must be obeyed, even if erroneous); *Commonwealth v. Ryan*, 459 Pa. 148, 159, 327 A.2d 351, 356 (1974) (same); *Bowers v. Reitz*, 315 Pa. 310, 314, 172 A. 707, 709 (1934) (declaring that the fact that an order is erroneous, improvidently granted, or irregularly obtained does not excuse violation of the order); *Commonwealth ex rel. Keely v. Perkins*, 124 Pa. 36, 48, 16 A. 525, 526–27 (1889) (observing that a court was empowered to enforce its order if the court possessed jurisdiction and such order "was lawfully made"); *Commonwealth v. Roviello*, 229 Pa.Super. 428, 438–39, 323 A.2d 766, 772 (1974) (observing that a "court's power to punish for contempt is limited to situations in which it has both the jurisdiction and the power or authority to render the particular decree or order") (citing, e.g., *Keely* ). *See generally* 17 Am.Jur.2d *Contempt* §§ 147, 148 (2000); P.H. Vartanian, *Right to Punish for Contempt for Failure to Obey Court Order or Decree Either Beyond Power or Jurisdiction of Court or Merely Erroneous*, 12 A.L.R.2d 1059 (1950).

nical questions from the discussion in an effort to focus the Court on its core concern. This strategy not only sharpened the argument, but also demonstrated fitting deference to the courts' interests, since, absent extraordinary circumstances, allowing litigants to simply ignore judicial mandates would seriously impede the ability of a court to manage the litigation before it and, more generally, the orderly administration of justice.

Dispositionally, therefore, I would affirm the order of the Commonwealth Court, leaving intact the trial court's contempt order in this case.

Justice CAPPY and Justice CASTILLE join this opinion.

### OPINION IN SUPPORT OF REVERSAL

NIGRO, Justice.

I agree with the Justice Zappala's Opinion in Support of Reversal that the trial court should not have the power to direct a non-party representative with settlement authority to attend an entire trial. I write separately, however, because I believe that the trial court should be able to order a non-party representative with settlement authority to attend the first day of a trial. Since many cases tend to settle on the day of trial, such an order would give the court an opportunity to meet with the non-party representative, the individual who controls the purse strings, in an effort to effectuate a settlement and avoid the costs of a trial.