IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Old Forge Borough                :
                                       :
      v.                      :   No.  679 C.D. 2022
                                         :
Walter Stocki, Jr., individually   :   Argued: December 4, 2023
and now trading as Scrap          :
Enterprises, Inc.,              :
                Appellant   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: January 5, 2024

Walter Stocki, Jr., individually (Stocki), and trading as Scrap Enterprises, Inc., appeals from the April 22, 2021 order of the Court of Common Pleas of Lackawanna County (trial court), finding Stocki in contempt for violating a July 31, 2018 order entered upon the agreement of Stocki and Old Forge Borough (Borough) and the trial court's subsequent bench order entered on May 9, 2019. Upon careful review, we affirm.

## I.    __Procedural and Factual History__

Stocki is the owner of real property located at 105 North Keyser Avenue, in the Borough (Property) upon which he operates, what he described throughout these proceedings as, a machinery sales and rental business. The Property is located in a C-2 Commercial Highway Zoning District, where machinery and sales are a permitted use. The front and sides of the Property are adjacent to commercial real estate and

undeveloped land. The rear portion of the Property borders a residential neighborhood. Community residents brought multiple complaints to Borough officials about the activities being conducted on the Property as well as the nuisances resulting from such activities including, but not limited to, the uncleanliness of the Property; noise, dirt, and odor coming from the Property; oil and chemical fires on the Property; chemical spills on the Property and public thoroughfares, and the extension of activities beyond normal working hours into the nights and weekends.

The Borough initiated an enforcement proceeding against Stocki by enforcement notice, via letter dated June 1, 2017, notifying him of violations of the Borough's Zoning Ordinance; specifically, that Stocki was using the Property for a non-permitted use in violation of Chapter 350 of the Zoning Ordinance by operating a junkyard within a C-2 Highway Commercial Zoning District. Stocki failed to timely appeal said enforcement notice, failed to comply with said enforcement notice, and continued to operate the business in violation of the Zoning Ordinance.

As a result, on August 11, 2017, the Borough filed a civil enforcement proceeding against Stocki before a magisterial district judge (MDJ). After a hearing on November 16, 2017, at which Stocki did not appear but was represented by counsel, the MDJ entered judgment in favor of the Borough. On November 27, 2017, Stocki appealed to the trial court. Despite being found guilty and fined by the MDJ, Stocki continued to operate his business in violation of the Zoning Ordinance.

On February 22, 2018, the Borough filed a complaint, seeking injunctive relief to restrain Stocki from operating a junkyard in violation of Borough ordinances, as well as fines for the violations. On May 1, 2018, the Borough filed a petition for a preliminary injunction, alleging that Stocki had continued to operate a junkyard on the Property.

After a hearing was held on July 30, 2018, on the Borough's complaint and petition for injunctive relief, the parties jointly drafted a proposed stipulated order, which the trial court adopted and entered on July 31, 2018. The stipulated order directed Stocki to, *inter alia*, immediately cease any and all activity on the Property in violation of the Zoning Ordinance, including the operation of a junkyard business and activities related or ancillary thereto. More specifically, Stocki was given six months to remove non-operational equipment, vehicles, and machinery from the Property. That order also set up a schedule of status conferences to monitor Stocki's progress.

The trial court granted Stocki multiple continuances and extensions of time to clean the Property. On October 11, 2018, during a scheduled status conference, the trial court received evidence that Stocki had increased the amount of materials on the site. (Reproduced Record (R.R.) at 3a.) The trial court then stated:

> THE COURT: . . . you have to remove non-operational equipment, the vehicles from the [P]roperty by October 31st. If you don't do that, I'm setting-- I wrote it down here, I'm going to hold you in contempt of court. I am setting November 1st, that's one day after that is the sentencing date at 9:30. And Mr. Stocki, I'm going to tell you, you're not going to be happy with the sentence. Now, I don't want to do that to you, but I'm going to incarcerate you. I'm going to hold you in contempt of court if this isn't done by October 31st . . . .

(R.R. at 4a.)

On May 2, 2019, the trial court conducted a site visit with both parties and their counsel present, as well as a neighbor, Chris Goetz (Goetz), and the media. A court reporter was present, and the trial court viewed the Property, both on the site and around it. During the site visit, there were conversations between counsel and the trial court, Stocki and the trial court, Stocki and Goetz, and the trial court and Goetz about

3

the progress Stocki had made in cleaning the Property. Suffice it to say, the trial court was not satisfied with the amount of progress Stocki had made.

> THE COURT: . . . I'm glad I came to see the [P]roperty, but I'm not happy with what I see. I didn't think it would look like this.
>
> * * * *
>
> THE COURT: I've given you months to do something about this. I don't like what I see, number one. You said -- I heard you say that you're going to sell this and get rid of it. By next Thursday -- which at this point, Mr. Stocki, I'm prepared to put you in jail. I don't like this one bit at all. Be prepared to sell the [P]roperty if that's what you want to do. Just sell the [P]roperty and get rid of it. But that might not alleviate the problem that I'm prepared to put you in jail on Thursday. It's just unbearable. Look at it. It smells. It's turned into a dump.

(R.R. at 20a-23a.)

On May 9, 2019, after having given Stocki nearly a year to address the violations, the trial court held an emergency hearing to address compliance with the July 31, 2018 stipulated order. At the conclusion of the hearing, the trial court informed Stocki he had 100 additional days to comply with the July 31, 2018 stipulated order; if not, then the trial court would *sua sponte* hold Stocki in contempt if the Borough did not file a Petition for Contempt and Rule Returnable beforehand. The trial court further directed Stocki to post a bond for $20,000 and to stop doing business as a scrap/junk yard. Stocki was present and acknowledged on the record that he understood the trial court.

On August 14, 2019, the Borough filed a Petition for Contempt and Rule to Show Cause as to why its Petition for Contempt should not be granted.

On August 26, 2019, Stocki filed a Motion for Recusal and for a Stay pending disposition of the recusal motion. Stocki alleged the trial court was biased

4

towards him at the May 2, 2019 site visit. He claimed that representatives of the Borough, neighbors, and residents were allowed to make comments to the trial court relative to the Property and the pending zoning matters. He asserted that the comments made by the Borough representatives, neighbors, and others to the trial court were not under oath and were not subject to cross-examination by his counsel. He alleged that in addition to engaging in conversations with representatives of the Borough, neighbors, and other residents during the site visit which were not on the record, the trial court publicly expressed dissatisfaction regarding the appearance of the Property and stated to him that it was prepared to put him in jail for his alleged non-compliance with the July 31, 2018 stipulated order. *Id.* at 23a. The trial court's comments in this regard were reported later that day by WNEP T.V. and again the following morning in a news article published by the Scranton Times/Tribune. *Id.* at 59a. Stocki further alleged that following the conclusion of the site visit and without notice or invitation to either him or his counsel, the trial court met with representatives of the Borough, neighbors, and residents at the adjoining residential neighborhood where the judge again engaged in *ex parte* discussions and heard comments from these persons relative to the pending zoning case. He maintained that by engaging with persons who had an interest in the case adverse to his interests at both the May 2, 2019 site visit and the subsequent visit to the adjoining residential neighborhood without either him or his counsel present, the trial court's objectivity and impartiality were seriously compromised.

A hearing was held on Stocki's Motion for Recusal on September 19, 2019, at which time the trial court denied said Motion. The trial court gave both parties a chance to make statements. Borough's counsel stated on the record that there were no *ex parte* communications between the trial court and the Borough. It was also the

5

Borough's position that Stocki waived any recusal issue because he failed to raise it in a timely manner.

The trial court responded directly to Stocki's allegations that it was biased against him, explaining that it had at all times been impartial, and that it had treated Stocki fairly during the proceedings, giving him multiple opportunities to comply with the Ordinance. The trial court specifically denied talking to anyone *ex parte* at the site visit:

> THE COURT: And I think somebody drove me to [a neighbor's] house. I don't even remember talking to him at the -- I didn't say anything to him. I just went to look, [Stocki's counsel], to see what it looked like from his house and if there was a smell in the area where his house was from [the neighbor's] yard. I don't remember even talking to [the neighbor] at this [P]roperty.
>
> * * * *
>
> Mr. Stocki, I just want to tell you I did everything I could, everything I could to help you and be impartial in this case. . . . I had several status conferences to help you. Several status conferences. I don't remember how many, but there might have been four or five or six. I granted numerous continuances, over objection of [Borough's counsel], to help you. To help you do something with this [P]roperty.
>
> * * * *
>
> I had many status conferences. I issued a court order, and your job is to respect the court order. That's what you're supposed to do, respect a court order. I did everything. [Borough's counsel] kept objecting to me when I'd give you these court orders, do this, do that, because he'd say why are you giving him more time? I gave you so many days and you never listened to what I said.

6

I want you to hear me clearly, Mr. Stocki. If you don't follow a court order – [your counsel] said I said you're going to go to jail. If you don't follow a court order that's usually what happens. And I'll say it again, if you don't follow a court order that's usually what happens. I'm not going to issue a court order and just say to you Mr. Stocki, well, if you don't follow it don't worry about it. This is a court of law. You have to understand what this is all about. Your lawyer understands that.

I'm not going to recuse myself from this case, Mr. Stocki. What I'm telling you now is go and clean up this mess. I'm going to set another hearing. I'm going to set a contempt hearing in 30 days. That's what I'm going to do. It's a contempt hearing. I'm going to set it for 30 days. I did everything I could to help you. Actually, when I was walking on that [P]roperty you know you helped me walk around that [P]roperty. You helped me because I couldn't do it. You were holding my arm, helping me walk around that [P]roperty. I don't have anything against you personally. I don't have anything against you personally at all.

(Supplemental Reproduced Record (S.R.R.) at 30b-32b, 35b.)

Subsequently, the trial court held three hearings on the Borough's Rule and Petition for Contempt on December 18, 2019, March 2, 2020 and July 10, 2020. The witnesses for the Borough included, but were not limited to, the zoning officer, public officials of the Borough, neighbors, and a civil engineer. In addition to the testimony of Stocki, the trial court heard testimony from an employee of Scrap Enterprises, Inc. and an expert in planning and zoning.

Stocki testified that he was familiar with, read and understood the July 31, 2018 stipulated order. (S.R.R. at 40b.) He testified that he was present in court on May 9, 2019, and recalled what the trial court had ordered him to do. *Id.* at 41b- 43b. Stocki acknowledged that non-operational equipment, vehicles, and machinery were still located on the Property when the trial judge viewed the Property. *Id.* at 45b-46b. He

7

testified that he kept items on the Property which might be non-operational but could have parts beneficial for use. He sold both non-operational equipment and equipment he repairs. *Id.* at 139b-40b. Upon dismantling non-operational equipment there is a lot of waste, so sometimes he kept the whole non-operational item that had parts on it that he could use. *Id.* at 137b-38b. He further testified that he has not read nor is he familiar with the Borough Zoning Ordinance, nor did he obtain a permit to bring the Property in compliance with said Ordinance. He was not aware of the zoning district of the subject Property. *Id.* at 142b-46b.

Joe Kolmansperger testified that he worked for Stocki and that Stocki's business was to take equipment and disassemble it to use and sell the parts. *Id.* at 131b-32b. He acknowledged that a tire, a caterpillar track, and an engine are "parts" and that separately they cannot do anything and would be non-operational items. *Id.* at 133b-34b. He explained that a subcontractor, Scorching Metals LLC, would enter the Property to cut up the pieces of equipment to send some parts to the junkyard and other parts such as tracks, cylinders, engines, pumps would be piled up on the Property and sold. *Id.* at 135b-36b.

The Borough's Zoning Officer testified that he was familiar with the Property since prior to 2013, and that he was the Zoning Officer who filed the original violation notice. *Id.* at 47b-48b, 68b. He had observed and documented by photographing non-operational equipment, vehicles, machinery, scrap, and parts on the Property. *Id.* at 49b-67b, 71b-97b. He testified that the Property has not come into compliance with the Borough's Zoning Ordinance, the July 31, 2018 stipulated order, or May 9, 2019 bench order. *Id.* at 67b-70b. He identified a photo depicting parts of a dismantled piece of equipment that he explained could not be used for resale, but rather would be considered "junk." *Id.* at 66b-70b. He testified that machinery rental

8

and sales are permitted on the Property, and that Stocki would not be in violation of the Ordinance if he brought a piece of operational equipment onto the Property and sold it as operational. *Id.* at 98b-99b. He explained, however, that Stocki could not disassemble a piece of equipment for resale of a part and that a machine is something that is fully operational. He testified that the C-2 Commercial Highway Zoning District does not permit the sale of parts that come off other equipment but rather it allows the sale and lease of machinery. *Id.* at 102b. The Borough's Zoning Officer testified that under the Borough's Zoning Ordinance, machinery that is subject to being dismantled, processed for reclamation, salvaged, or recycled to sell again is "junk." *Id.* at 102b-03b.

Robert Laczi, a representative of the Pennsylvania Department of Environmental Protection, testified that he is familiar with the Property and was last on the Property on February 5, 2020. At that time, he observed equipment in pieces on the Property. *Id.* at 105b-07b. He also testified that he saw and documented (by photographing) pieces of equipment, parts, and engines uncontrollably leaking oil onto the Property. *Id.* at 108b-11b.

Robert Wenzler, a neighbor, testified that he has been living across the creek from the Property since July 2018. He noticed on two or more occasions fires at the Property, and heard noise from heavy equipment seven days a week. *Id.* at 111b-15b.

Nicholas Rosa testified that he worked for Medico Industries as a field service technician and worked on heavy equipment. He was on the Property on November 6, 2019, and observed parts missing from equipment and testified that, in his experience, missing parts render equipment non-operational. *Id.* at 116b-25b.

Chris Goetz testified that he lived directly behind the Property and that since May of 2019, he saw machines moving, heard metal being dropped and pulled apart, and equipment being delivered to the Property, which had to be removed from trailers by other equipment because it was not operational. He also saw torches and people cutting up pieces of equipment and parts such as engines, tracks and other parts on lowboys being taken off the Property for sale. *Id.* at 126b-30b.

On April 22, 2021, the trial court filed its Opinion and Order, adjudicating Stocki in civil contempt and enjoining Stocki from importing onto the Property any equipment, vehicles or machinery that are not immediately and readily made wholly operational, or for the purposes of dismantling and/or salvaging its parts.

On May 5, 2021, Stocki filed a Motion for Reconsideration, which was denied.

## II.   Issues

1. Whether the trial court erred in declining to recuse itself.

2. Whether the April 22, 2021, Contempt Order is contrary to the weight of the substantial evidence and is contrary to the law.[1]

---

[1] Stocki's Statement of Questions Involved also includes two additional issues: (1) whether the trial court committed an error of law by granting injunctive relief against Stocki when the proceedings at issue related to the Borough's Petition for Contempt; and (2) whether the trial court erred in denying Stocki the opportunity to present evidence of selective enforcement. (Stocki's Br. at 5.) Although listed as issues, nowhere in the argument section of his brief does Stocki address them. In fact, there are only two arguments identified in the argument section. In accordance with Pa. R.A.P. 2119(a), the argument section of a brief must separately address each claim presented. Issues raised in the statement of questions involved but not addressed in the argument section are waived. *Commonwealth v. Jackson*, 431 A.2d 944 (Pa. 1981). Accordingly, these issues are waived as this Court cannot provide meaningful review of an issue which is raised but not addressed in the argument section.

### III. Discussion

### A. Whether the trial court erred in declining to recuse itself

In his first issue, Stocki argues that, given the appearance of bias created by the facts and circumstances, the trial court should have recused itself. He contends that the trial court expressed bias towards him on two occasions: (1) at the October 11, 2018 status conference, during which the trial court threatened Stocki with jail despite the fact that there was no contempt petition pending; and (2) at the May 2, 2019 site visit where it "publicly expressed its dissatisfaction to [] Stocki regarding the appearance of the [P]roperty and stated to [] Stocki it was prepared to put him in jail for his alleged non-compliance with the July 31, 2018 stipulated order." (Stocki's Br. at 23-24.) In addition, he contends that "the [trial court] further demonstrated its apparent inability to be fair and impartial by consenting to attend a tour of the adjoining residential neighborhood" and "engaged in *ex parte* discussions and heard comments from" Borough representatives and neighbors. *Id.* at 24.

The party requesting recusal must produce evidence establishing bias, prejudice or unfairness "which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998). The motion for recusal "is initially directed to and decided by the jurist whose impartiality is being challenged." *Id.* The Supreme Court has explained:

> In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. **This is a personal and unreviewable decision that only the jurist can make**. . . . **Where a jurist rules that he or she can hear and dispose**

11

>**of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion.**

*Id.* (emphasis added and citations omitted).

There is a presumption that judges of this Commonwealth are "honorable, fair and competent," *id.* at 89 (citation omitted), and, when confronted with a recusal demand, are able to determine whether they can rule "in an impartial manner, free of personal bias or interest in the outcome." *DeLuca v. Mountaintop Area Joint Sanitary Authority*, 234 A.2d 886, 897 (Pa. Cmwlth. 2020) (citation omitted). Our Supreme Court has recognized that

>[w]hile the mediation of courts is based upon the principle of judicial impartiality, disinterestedness, and fairness pervading the whole system of judicature, so that courts may as near as possible be above suspicion, there is, on the other side, an important issue at stake: that is, that causes may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause. . . . If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded and ofttimes malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case. If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system. The conscience of the judge alone is brought in question; he should, as far as possible, avoid any feelings of unfairness or hostility to the litigants in a case.

*Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 489 A.2d 1291, 1299 (Pa. 1985).

A party is required to request a judge's recusal "at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse." *Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017). In other words, "[i]f the party fails to present a motion to recuse at that time, then the party's recusal issue **is time-barred and waived**." *Id.* (emphasis added); *DeLuca*, 234 A.3d at 895 ("party that does not move promptly to recuse the assigned judge upon learning the facts relevant to recusal waives the issue").

At the outset, we note that Stocki never previously raised any issue of bias in relation to the October 11, 2018 status conference. He did not raise it in his motion for recusal. The first time Stocki raised this issue is in the instant appeal. He cannot raise a new issue on appeal; therefore, he has waived any claim that the trial court was biased towards him at the October 11, 2018 status conference. *See* Pa.R.A.P. 302(a) (issues not raised before the trial court cannot be raised for the first time on appeal).

Regarding the timeliness of the motion to recuse, we agree with the Borough that the motion was untimely. The facts central to Stocki's motion to recuse were known to him on May 2, 2019. Stocki did not raise any issue with bias at or during the May 2, 2019 site visit, or when the trial court issued its May 9, 2019 order, or during the 100 days the trial court gave him to comply with the Bourgh's Zoning Ordinance. Rather, he only filed his motion to recuse 12 days **after** the Borough filed its Petition for Contempt on August 14, 2019, which was nearly three months after the May 9, 2019 site visit. Therefore, because Stocki did not request recusal at the earliest opportunity, we conclude that he has waived this claim.

In any case, we agree with the Borough that the trial court did not abuse its discretion in denying Stocki's motion to recuse. Again, the party who seeks to disqualify a trial judge must "produce evidence establishing bias, prejudice or

13

unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Druce*, 848 A.2d 104, 108 (Pa. 2004) (The party who asserts [that] a [] judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal.). Here, there is no evidence whatsoever to support Stocki's allegation that the trial judge met with or held meetings or discussions with neighbors or Borough representatives after the site visit. The **only** information of record on the subject is the trial judge's statement at the hearing on the motion for recusal that he simply rode around the rear of the Property, and that he did not say anything to any neighbors and did not remember even talking to any neighbors at the Property. Moreover, there is not even a hint of bias in the trial judge's statements to Stocki during the site visit. The trial judge visited the Property to determine if Stocki had complied with the court's orders and found that Stocki had not. The trial judge had many options at that point, including putting Stocki in jail for contempt of court. Instead, the trial judge issued an order a week after the site visit, on May 9, 2019, which gave Stocki **another 100 days** to comply with the Borough's Zoning Ordinance. Stocki did not meet his burden of showing the trial judge had any bias towards him at any point during the proceedings. If anything, the record reflects that the trial judge went above and beyond trying to give Stocki enough time to comply with the July 31, 2018 stipulated order. Thus, we reject Stocki's claim that the trial court abused its discretion in denying his recusal motion.[2]

---

[2] We also disagree that the trial court's statements during the October 11, 2018 status conference demonstrated bias. That was not bias. That was a trial court telling a litigant what the repercussions could be if he continued to refuse to comply with the Borough's Zoning Ordinance and orders.

**B. Whether the contempt order was contrary to the weight of the evidence**

In his second issue, Stocki argues that contempt was not proven because he substantially complied, and has in good faith attempted to comply, with the July 31, 2018, stipulated order and the trial court's May 9, 2019 bench order.

The law is well established that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Department of Environmental Protection v. Cromwell Township, Huntingdon County*, 32 A.3d 639, 653 (Pa. 2011) (quoting *Commonwealth v. Bowden*, 838 A.2d 740, 760 (Pa. 2003)). "Courts have broad discretion in fashioning and administering a remedy for civil contempt." *Mulligan v. Piczon*, 739 A.2d 605, 611 (Pa. Cmwlth. 1999), *aff'd*, 779 A.2d 1143 (Pa. 2001).

"The purpose of civil contempt is to compel performance of lawful orders[.]" *Cecil Township v. Klements*, 821 A.2d 670, 675 (Pa. Cmwlth. 2003). To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *W. Pittston Borough v. LIW Investments, Inc.*, 119 A.3d 415, 421 (Pa. Cmwlth. 2015).

In the instant case, the evidence submitted at the hearings before the trial court substantially proved that (1) Stocki had notice of the specific orders which he is alleged to have disobeyed; (2) Stocki's acts constituting his violations were volitional; and (3) Stocki acted with wrongful intent in choosing to continue the illegal operation of his business all while continuously and repeatedly violating both trial court orders long after each had been entered on July 31, 2018 and on May 9, 2019. He did so by failing to (1) remove non-operational equipment, vehicles, and machinery from the

Property; (*i.e.*, bringing the use and activities of the Property in compliance with the Borough's Zoning Ordinance); and (2) clean the Property. At one point, during the timeframe he was supposed to be clearing junk from the Property, he had more delivered.

Accordingly, we conclude that the trial court did not err in finding that Stocki violated its Orders dated July 31, 2018, and May 9, 2019, or abuse its discretion when it entered its April 22, 2021 Order finding Stocki in contempt.

The trial court's April 22, 2021 order is affirmed.

 

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Old Forge Borough | : | |
| | : | |
| v. | : | No. 679 C.D. 2022 |
| | : | |
| Walter Stocki, Jr., individually | : | |
| and now trading as Scrap | : | |
| Enterprises, Inc., | : | |
| Appellant | | |

## *ORDER*

AND NOW, this 5th day of January, 2024, the April 22, 2021 order of the Court of Common Pleas of Lackawanna County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge