**WEST PITTSTON BOROUGH**

v.

**LIW INVESTMENTS, INC.**

**Appeal of: Glenn Keller.**

Commonwealth Court of Pennsylvania.

Submitted on briefs April 24, 2015.

Decided June 19, 2015.

Anthony Roberti, Jim Thorpe, for appellant.

Mark W. Bufalino, Wilkes–Barre, for appellee West Pittston Borough.

BEFORE: RENÉE COHN JUBELIRER, Judge and ROBERT SIMPSON, Judge and ANNE E. COVEY, Judge.

OPINION BY Judge ANNE E. COVEY.

Glenn Keller (Keller) appeals from the Luzerne County Common Pleas Court's (trial court) October 3, 2014 order directing Keller's incarceration due to LIW Investments, Inc.'s (LIW) failure to comply with the trial court's orders. Essentially, the issue for this Court's review is whether the trial court erred by sanctioning Keller for LIW's contempt.

LIW, a Pennsylvania corporation, owns the real property located at 504 Wyoming Avenue in West Pittston Borough (Borough), Pennsylvania, upon which the left half of a residential duplex is situated (Property). By March 22, 2013 notice (First Notice) sent to LIW's corporate office in Wilmington, Delaware, the Borough's Code and Zoning Enforcement Officer Bill O'Donnell (O'Donnell) notified LIW that he inspected the Property due to complaints and discovered numerous significant code violations creating fire and health hazards that LIW must address.[1] The violations included leaking water and fuel oil, mold on the floor and walls, unsound front and rear porch structures, trash and odor. The First Notice also informed LIW that copper piping had been stolen from the Property on March 20, 2013 for which a police report was made. The First Notice warned LIW that its failure to contact O'Donnell within ten business days would result in a citation. LIW did not respond.

---

1. The First Notice specifically referenced Borough Ordinance No. 379, Chapter 105, Subsections 105–2, 105–3, 105–4 and 105–6. The Ordinance was not made part of the record before this Court. Notwithstanding, the parties do not dispute the Borough's authority to take action against LIW for the Property's condition.

In an April 9, 2013 notice (Second Notice) addressed to LIW and its President, Keller, at LIW's Mount Pocono, Pennsylvania office, O'Donnell stated that the Property had been posted "UNFIT FOR HUMAN HABITATION."[2] Reproduced Record (R.R.) at 18a–19a. In addition to the previously-listed violations, O'Donnell referenced dead animals in the house. The Second Notice warned that LIW's continued failure to respond would result in a citation. LIW did not respond.

On May 10, 2013, the Borough filed a Complaint with the trial court alleging that LIW allowed the Property to be "deteriorated[,] . . . in disrepair, unsafe, unsanitary and a hazard to neighboring properties and the general public." R.R. at 6a. The Borough sought judgment against LIW for the Borough's costs of "declaring the structure located on the [Property] to be a nuisance and in violation of the [Borough's ordinances] and the laws of this Commonwealth, abating and removing any dangerous conditions and any demolition expenses together with a [10%] penalty[.]" R.R. at 8a. LIW did not answer the Complaint.

On June 18, 2013, the Borough filed a motion for preliminary injunction to compel LIW to abate the Property's hazards and properly maintain it. On October 25, 2013, at the preliminary injunction argument, Joseph Terrana, Esquire (Terrana) informed the trial court that notwithstanding the Department of State's records that Keller was LIW's president, LIW was defunct and he represented Keller personally. Terrana nevertheless stipulated to receipt of the Second Notice on behalf of LIW and Keller. See Supplemental Reproduced Record (S.R.R.) at 11b–12b.

O'Donnell testified regarding the Property's condition and presented photographs and the Borough's costs of securing the residence, cutting the grass and maintaining the Property's sidewalks from September 25, 2012 to July 31, 2013. The trial court instructed the parties to prioritize the Property's needs and establish timeframes for the work to be completed upon which the trial court could fashion an order. Keller assured the trial court that LIW would not transfer the Property in the meantime. See S.R.R. at 15b. Keller also advised the trial court that he would meet with Borough representatives at the Property at 8:00 a.m. the following Monday. See S.R.R. at 8b, 15b.

On December 27, 2013, the trial court issued a preliminary injunction ordering LIW by January 31, 2014 to remove garbage, debris, animal carcasses and other hazardous and unsanitary contents from the Property, and to replace or board up portions of the Property exposed to the outdoors.[3] Further, LIW was required to supply the Borough with a professional mold assessment and recommendation report. The December 27, 2013 order prohibited LIW from transferring the Property, and authorized the Borough to enter and inspect the property on January 31, 2014 and February 28, 2014.

On February 6, 2014, the Borough filed a motion for contempt, sanctions and issuance of a bench warrant because LIW failed to comply with the December 27, 2013 order. The trial court held a hearing on March 24, 2014. O'Donnell testified at the hearing that he conducted the January 31, 2014 inspection; however, the Borough did not receive a mold assessment and,

---

2. The Second Notice also referenced Borough Ordinance No. 379, Chapter 105, Subsections 105–2, 105–3, 105–4 and 105–6.

3. Although the December 27, 2013 order references a December 26, 2013 hearing, no transcript was supplied with the record for a hearing held on that date.

when he arrived to conduct his February 28, 2014 inspection, the Property was locked. He explained that he could tell by looking from the outside that the soffits had been enclosed and that the carcasses and some of the debris had been removed, but not all of the work LIW was ordered to perform had been completed.[4] The trial court queried:

> The interesting question here is if the Court makes the rule absolute and extends the time frame for performance, ... does this Court have authority to hold an officer of the corporation in contempt without notice as to whether or not that corporation, which is really the party here, has the financial wherewithal to bring about compliance with the order of the Court.

S.R.R. at 23b. Terrana argued that LIW did not have liquid assets and that the trial court did not have the authority to jail Keller for LIW's failure to obey the trial court's December 27, 2013 order. The trial court issued an order on March 25, 2014 which made its December 27, 2013 order absolute, deemed LIW in contempt thereof and gave LIW 60 days to comply or suffer sanctions.[5]

On May 30, 2014, the Borough filed a motion for sanctions and issuance of a bench warrant. The trial court held a hearing on June 17, 2014, during which the Borough represented that there had not been any substantial changes at the Property, and that LIW still had not provided a mold assessment and recommendation. The trial court requested proof of LIW's financial status in order to assess LIW's ability to comply with the trial court's December 27, 2013 order.

Terrana represented that Keller was no longer LIW's president. He argued that Jose Luis Ciriaco (Ciriaco) became LIW's president as of April 1, 2014.[6] Purportedly, by April 1, 2014 notarized Resolution to Resign, Keller placed Ciriaco on notice that Keller would no longer serve as LIW's president, "[d]ue to personal conflicts between us." R.R. at 29a.[7] However, the only proof of that averment was a Department of State print-out **dated January 29, 2015** listing Ciriaco as LIW's president. *See* R.R. at 30a. The Resolution to Resign was not admitted into evidence before the trial court.

The trial court stated that since Keller attended the hearing and was listed with the Department of State as LIW's president, either he or someone now acting on LIW's behalf must provide proof of LIW's viability. The trial court's June 18, 2014 order mandated LIW to appear on July 10,

---

4. Also at that March 24, 2014 hearing, O'Donnell disclosed that there are approximately six citations pending against the Property. The Borough contended that they were being held in abeyance pending the preliminary injunction proceedings. Terrana described that a citation hearing had been scheduled, but since Keller did not attend the hearing, Terrana did not know the outcome.

5. The Borough explained that its efforts to obtain default judgment for LIW's failure to answer the Complaint were thwarted because the notice of default judgment mailed to LIW and Terrana was returned from LIW as undeliverable. However, Terrana acknowledged that he received the mailing. *See* S.R.R. at

26b. At the July 15, 2014 hearing, the Borough stated that LIW filed a motion to strike the default judgment, but it had not yet been adjudicated.

6. Ciriaco's role at that time is not clear from the record.

7. The record does not reveal if or when the Resolution to Resign was provided to LIW. Moreover, although the Resolution to Resign was attached as an exhibit to LIW's June 12, 2014 brief in opposition to the Borough's motion for sanctions and issuance of a bench warrant, it was not authenticated and/or admitted into evidence at the hearings.

2014 with documentation of LIW's finances since January 1, 2011. The order warned that if LIW failed to appear and produce the records, "THE COURT MAY ISSUE A WARRANT FOR YOUR ARREST AND YOU MAY BE COMMITTED TO JAIL." R.R. at 24a.

At a July 15, 2014 hearing, the trial court recited that, in response to its June 18, 2014 order for LIW's financial records, it had received only an index listing 12 properties LIW owned in Luzerne County. Terrana clarified that several of the properties had been sold at tax sales. Terrana informed the trial court that he had filed an appeal from the trial court's June 18, 2014 order that day on LIW's behalf.[8] The trial court recognized that in light of LIW's appeal it had no authority to proceed.

On July 24, 2014, the Borough filed a motion to strike LIW's appeal. By September 19, 2014 order, this Court deemed the June 18, 2014 order interlocutory because it did not hold LIW in contempt. Thereafter, on September 22, 2014, the trial court issued a rule for LIW to show cause why the Borough's motion for contempt should not be granted. The rule was returnable at a hearing to be held on October 3, 2014.

At the October 3, 2014 hearing, Terrana acknowledged that Keller was still listed as an active officer of LIW, and admitted that LIW had an obligation to notify the Department of State of a business change, but that, "in [Keller's] mind[, he] resigned as president of LIW in April of 2014." S.R.R. at 40b. Keller did not attend the hearing. The following exchange occurred:

THE COURT: What you're suggesting to me is in an effort—and this is how it comes across to the Court—to evade responsibility there is a decision made by your client to withdraw, thus leaving the positions of officers vacant....

[ ] TERRANA: If I may, Your Honor, ... [a]s I said, I remained in this until today because I don't believe that anyone should go—a bench warrant should be issued for [Keller] in this case. Technically, I do not know—I do not have a client because I was taking direction from the Kellers.

THE COURT: [ ] Keller—and, of course, [ ] Keller happens to be listed as of the documents submitted to us as an officer of the corporation....

....

[ ] TERRANA: I did submit and [ ] Keller was in court and I did submit his resignation letter.

THE COURT: His resignation letter is simply to himself, okay, as the officer of the corporation. My question was to you, did he then follow the necessary procedures outlined whereby he notified the Department of State?

[ ] TERRANA: I don't believe so, Your Honor.

....

THE COURT: .... Therefore, as far as the Department of State is concerned, he is still listed as an active organization—strike that—an active officer of [LIW].

[ ] TERRANA: Yes, sir.

S.R.R. at 40b–41b.

The Borough informed the trial court that Keller and Terrana appeared at the Property's tax sale court proceeding the

---

8. Terrana appealed the trial court's June 18, 2014 order to the Superior Court on July 15, 2014. The matter was transferred to this Court and assigned Docket No. 1411 C.D. 2014.

preceding week. In response, the trial court stated:

> THE COURT: .... Obviously, as I narrowed [the June 18, 2014 order], I did so mindful of the fact that there is a corporation involved that acts through its officers, its agents, of which [Keller], according to the Department of State, is one. In fact, that information was communicated to this Court earlier. Your statement to the effect is basically this: He resigned by sending a letter to himself but failed to notify the Department of State to the best of your knowledge, information, and belief. This Court, cognizant of the difficulties that have encompassed this case as we moved along, issued a very narrow Order on June 18th. That Order directed him to provide certain documents so that this Court could determine the appropriate sanction. We were looking for the financial records not of him individually but of the corporation. That has not been complied with. Your defense seems to be today he's not the officer. My question to you, who is, since there's been nothing filed as of record nor did anybody indicate anything to me that his son or another family member or a stranger to this Court took that position, number one, and notified the Department of State. This is getting rather circular....
>
> [ ] TERRANA: Yes, Your Honor,
>
> THE COURT: .... You had said something earlier to me about that this is a corporate defendant. I agree with that. However, all corporations, as I said earlier, operate through individuals who are officers, agents of it. This Court is satisfied that [ ] Keller fell within that category. Now, if, in fact, as suggested to this Court by you that there were no assets, then this would have been a relatively simple thing to accomplish; and, therefore, the Court not having a key to the door, because he didn't have the assets and this Court was not about to make him personally responsible for the debt of the corporation, would have been at a different end. But that didn't happen because your client failed to comply with that directive. I'm not going any further than that right now....
>
> ....
>
> [ ] TERRANA: But, Your Honor, my point is that arguably LIW could not care whether [ ] Keller is incarcerated. And, therefore—again, somebody has to prepare an appeal in this case.
>
> THE COURT: Yes. You may do that.
>
> [ ] TERRANA: I absolutely do not—I am absolutely not going to do that.
>
> THE COURT: But you understand that from this Court's perspective this Court has given every opportunity to your client to comply. I was very much cognizant of the fact that if the corporation did not have assets and therefore was not in a position to be able to make the changes that were originally directed in a prior Order then I certainly would not have imposed a restriction on him in terms of contempt or a finding of contempt. However, once again, what your client appears to this Court to wish to do is take the advantage of the corporate structure and then leave a corporate structure as a shell, and then that leads to a query which is not before this Court as to whether or not they are actually the alter ego for a corporation and whether or not the veil of corporate protection should be pierced. That's not before me.

S.R.R. at 42b–44b.

The trial court's October 3, 2014 order held LIW and Keller in contempt of the trial court's June 18, 2014 order, and ordered Keller's incarceration beginning at 7:00 a.m. on October 14, 2014 and continu-

ing until LIW complied with the trial court's June 18, 2014 order. The October 3, 2014 order warned: "Failure by [Keller] to appear . . . as directed herein will result in the issuance of a Bench Warrant." R.R. at 27a. On October 10, 2014, Keller appealed to this Court.[9]

 Keller argues that, under the herein circumstances in which he was not named in the Borough's action and he is not affiliated with LIW, he cannot be held liable for LIW's contempt. The law is well-established that " '[c]ourts possess an inherent power to enforce their orders by way of the power of contempt.' " *Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cnty.*, 613 Pa. 1, 32 A.3d 639, 653 (2011) (*Cromwell Township*) (quoting *Commonwealth v. Bowden*, 576 Pa. 151, 838 A.2d 740, 760 (2003)). "Courts have broad discretion in fashioning and administering a remedy for civil contempt." *Mulligan v. Piczon*, 739 A.2d 605, 611 (Pa. Cmwlth.1999), *aff'd*, 566 Pa. 214, 779 A.2d 1143 (2001).

 " 'The purpose of civil contempt is to compel performance of lawful orders[.]' " *Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa.Super.2004) (quoting *Cecil Twp. v. Klements*, 821 A.2d 670, 675 (Pa. Cmwlth.2003)). Because the trial court's October 3, 2014 order was intended to coerce LIW/Keller to comply with the June 18, 2014 order to produce LIW's financial records, it is a civil contempt order. "Pennsylvania courts . . . have stated that in civil contempt proceedings, the burden is generally on the complaining party to prove noncompliance with the court order by a preponderance of the evidence." *Schnabel Assocs., Inc. v. Bldg. & Constr. Trades Council of Phila. & Vicinity, AFL–CIO*, 338 Pa.Super. 376, 487 A.2d 1327, 1336–37 (1985). However, mere noncompliance with a court order is insufficient to prove civil contempt. *Bold v. Bold*, 207 Pa.Super. 365, 939 A.2d 892 (2007).

> 'To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had **notice** of the specific order or decree which he is alleged to have disobeyed;[10] (2) that the act constituting the contemnor's violation was **volitional;** and (3) that the contemnor acted with **wrongful intent.'**

*Epstein v. Saul Ewing, LLP*, 7 A.3d 303, 318 (Pa.Super.2010) (emphasis added) (quoting *Lachat v. Hinchcliffe*, 769 A.2d 481, 489 (Pa.Super.2001)).

 Moreover, corporate officers can be held in contempt of a corporation's noncompliance. In *Wilson v. United States*,

9. "Our scope of review when considering an appeal from a contempt order is limited to . . . whether the trial court abused its discretion or committed an error of law." *Dep't of Envtl. Res. v. Gentile*, 683 A.2d 711, 712 (Pa. Cmwlth.1996). "When considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge." *Mulligan v. Piczon*, 739 A.2d 605, 608 n. 4 (Pa.Cmwlth.1999), *aff'd*, 566 Pa. 214, 779 A.2d 1143 (2001).

10. [I]n order for a trial court to hold a party in contempt, a five-step process must first be completed. . . . That process includes: [()1] a rule to show cause . . .; [()2] an answer and hearing; [()3] a rule absolute; [()4] a hearing on the contempt citation; and [()5] an adjudication of contempt. *Cleary v. Dep't of Transp.*, 919 A.2d 368, 372 (Pa.Cmwlth.2007). "Fulfillment of all five factors is not mandated, however. '[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation and defense.' " *Wood v. Geisenhemer–Shaulis*, 827 A.2d 1204, 1208 (Pa.Super.2003) (quoting *Diamond v. Diamond*, 792 A.2d 597, 601 (Pa.Super.2002)); *see also Schnabel Assocs., Inc.*

221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), the United States Supreme Court affirmed a contempt judgment against a corporation's president for refusing to produce books required by a subpoena *duces tecum* issued only against the corporation. The *Wilson* Court held:

A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt. The applicable principle was thus stated by Chief Justice Waite in [*Bd. of Comm'rs of Leavenworth Cnty. v. Sellew*, 99 U.S. 624, 25 L.Ed. 333 (1878)], where a peremptory mandamus was directed against a municipal board: 'As the corporation can only act through its agents, the courts will operate upon the agents through the corporation. When a copy of the writ which has been ordered is served upon the clerk of the board, it will be served on the corporation, and be equivalent to a command that the persons who may be members of the board shall do what is required. If the members fail to obey, those guilty of disobedience may, if necessary, be punished for the contempt. Although the command is in form to the board, it may be enforced against those through whom alone it can be obeyed.... While the board is proceeded against in its corporate capacity, the individual members are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation.' [*Id.* at 627].

*Wilson*, 221 U.S. at 376–77, 31 S.Ct. 538 (emphasis added); *see also City of Scran-* *ton v. People's Coal Co.*, 274 Pa. 63, 117 A. 673 (1922). More recently, the Pennsylvania Superior Court specifically held that "where[, as here,] an **injunction** has issued against a corporation, it **may be enforced against officers**, agents, representatives, and employees of the corporation **who knowingly violate its provisions.**" *Neshaminy Water Res. Auth. v. Del-Aware Unlimited, Inc.*, 332 Pa.Super. 461, 481 A.2d 879, 884 (1984) (emphasis added).

■ The record evidence is clear that Keller was LIW's president and was in attendance at the October 25, 2013 hearing during which the trial court asked the parties to agree about the work to be conducted at the Property. In fact, Keller represented to the trial court that LIW would not transfer the Property. Moreover, Keller notified the trial court that he would meet the Borough's representatives the following week. Keller was still LIW's president on December 27, 2013 when the trial court issued a preliminary injunction against LIW and ordered the parties to agree on a timeframe to remedy the Property's defects. Copies of the trial court's December 27, 2013 order were served upon Keller and Terrana. *See* R.R. at 22a. Keller was still LIW's president and attended the March 24, 2014 hearing after which the trial court afforded LIW 60 additional days to comply with the December 27, 2013 order.

Despite Keller's claim that he resigned as LIW's president effective April 1, 2014, he attended the June 17, 2014 hearing. Because the trial court took notice that Keller was still listed with the Department of State as LIW's president, it ordered Keller on June 18, 2014 to produce LIW's financial records in July 2014. Although the record is unclear whether Keller attended the July 15, 2014 hearing, Terrana attended and argued on Keller's behalf. Keller did not attend the October 3, 2014

hearing, but Terrana appeared and again argued on Keller's behalf.[11] Thus, it was Keller who, despite clear notice, chose not to comply with the trial court's June 18, 2014 order.

Keller's purported resignation does not change this result. First, Keller's Resolution to Resign was not authenticated or admitted into evidence. Second, although Keller's written resignation would be "effective upon receipt thereof by the corporation[,]" neither Keller nor Terrana established when or whether LIW received it. 15 Pa.C.S. § 1732. Third, at the June 17, 2014 hearing, the trial court clarified:

> One way or the other, whoever the officer is, they're going to have an opportunity to provide the information. [Keller] is here. If he transferred his interest to his son, then you can give this to his son. In either case, somebody is going to respond within that time period and we're going to know where the finances are.

S.R.R. at 29b. Thus, had Keller's resignation been effective, he could have directed the trial court to LIW's responsible party. Rather, the only evidence the trial court had before it was that Keller was LIW's sole representative.[12] Accordingly, the trial court concluded in its January 7, 2015 Statement in Lieu of Opinion:

> This Court, as the record will indicate, has given [LIW] and its sole owner and President ample opportunity to purge the Rule Absolute issued by this Court on March 25, 2014. [LIW], by and through its President, has consistently

failed to adhere to the numerous Court Orders and has failed to appear as required as the President and sole owner of [LIW].

> [LIW] was given ample opportunity to demonstrate financial hardship as a basis for its failure to comply. At no time did it do so through its President and sole owner.

> If patience is a virtue, this Court has been truly virtuous throughout this year['s] long attempt to produce compliance by [LIW] and its President.

Trial Ct. January 7, 2015 Statement at 2–3.

Based upon the record evidence, Keller was the LIW officer fully aware of the trial court's orders and who knowingly and intentionally violated them. Under the circumstances, the trial court's June 18, 2014 order is enforceable against Keller. Thus, the trial court's October 3, 2014 contempt order is affirmed.

### *ORDER*

AND NOW, this 19th day of June, 2015, Luzerne County Common Pleas Court's (trial court) October 3, 2014 order is affirmed. This matter is remanded to the trial court for an order executing the sentence it previously imposed on Glenn Keller.

Jurisdiction relinquished.

---

**11.** Under the circumstances, Keller's contention that he was not advised of the October 3, 2014 hearing is disingenuous.

**12.** Throughout the trial court proceedings, Keller and LIW appeared to be acting in concert. Terrana's claims that he represented Keller rather than LIW were contrary to his actions, not the least of which was that *he*

*filed LIW's July 15, 2014 appeal* from the trial court's June 18, 2014 order *as LIW's counsel.* *See* S.R.R. at 1b. Further, we take notice that this Court's docket reflects that Terrana is likewise LIW's counsel for this appeal. Keller is represented by Anthony Roberti, Esquire.