IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tobyhanna Township | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 1012 C.D. 2024 |
| | : | |
| Tobyhanna Township Volunteer | : | |
| Fire Company, | : | No. 1126 C.D. 2024 |
| Appellant | : | |
| | : | Submitted: November 6, 2025 |

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge

*_OPINION NOT REPORTED_*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED: January 2, 2026

In these consolidated cases, Tobyhanna Township Volunteer Fire Company (Appellant) appeals from the orders entered in the Court of Common Pleas of Monroe County (trial court) granting injunctive relief in favor of Tobyhanna Township (Township) and finding Appellant in contempt of its injunctive order, resulting in sanctions. On appeal, Appellant chiefly challenges the trial court's creation of a constructive trust over all of the fire equipment in its possession, which the court determined was funded by Township tax revenue, and the court's imposition of sanctions for Appellant's removal of the equipment. Additionally, the Township has filed a motion to quash this appeal, contending that Appellant failed to file necessary

post-trial motions. Upon careful review, we deny the Township's motion to quash and affirm the orders of the trial court.[1]

## Background

Appellant is a Pennsylvania Nonprofit Corporation designated by the Internal Revenue Service as a charitable organization under Section 501(c)(3) of the Internal Revenue Code.[2] Appellant was originally known as the Poconos Pines Fire Company and its charter describes its corporate purpose as "fighting fire and the protection of property from damage and destruction by fire." (Reproduced Record (R.R.) at 30a.) Appellant has traditionally responded to fires both inside of the Township and throughout Monroe County on a mutual aid basis. In February of 1985, Township voters approved a non-binding referendum creating a fire tax (Fire Tax), which was used to fund Appellant and Pocono Summit Volunteer Fire Company (Pocono Summit), the second fire company officially recognized by the Township.[3]

On August 15, 2022, the Township Board of Supervisors (BOS) enacted Ordinance Number 571 (the Ordinance), and its stated purpose was "to establish fire protection in [the] Township; ensure basic oversight, control measures, procedures and regulations governing conditions which could impede or interfere with effective fire

---

[1] This Court consolidated these cases for purposes of briefing and disposition by order entered November 14, 2024. We also directed that the Township's motion to quash be addressed along with the merits appeals.

[2] 26 U.S.C. § 501(c)(3).

[3] The referendum read:

> Do you favor an additional one (1) mill real estate tax, for the purpose of purchasing fire-fighting apparatus and fire fighting vehicles for the [Appellant] and [] Pocono Summit?

(R.R. at 43a.)

2

services in the Township; and to authorize and permit activities for volunteer fire fighter personnel for workers' compensation purposes." (R.R. at 46a.) Before the Ordinance was enacted, Appellant informed the Township that if it was adopted, Appellant would no longer serve as an officially recognized fire company in the Township. Appellant advised that it instead would continue to provide fire and emergency services to Township citizens, but on a secondary basis, at no cost to the Township. (R.R. at 61a-62a, 74a.) After the Ordinance was enacted, Appellant removed itself from service as a recognized fire company in the Township. Since that time, the Township has not permitted Appellant to respond to fires within its boundaries and has instructed Monroe County not to dispatch Appellant to any fire or emergency calls. Appellant continues to respond to calls outside of the Township, and at the time of the proceedings, it occupied two firehouses owned by the Township located in Pocono Pines and Blakeslee, Pennsylvania.

### Appeal Concerning Injunctive Relief
### at Docket No. 1012 C.D. 2024

On August 24, 2022, the Township filed a complaint seeking injunctive relief requesting the trial court to enter an order: 1) precluding Appellant from providing fire and emergency services within the jurisdictional boundaries of the Township; 2) directing that all vehicles, vehicle titles, and equipment in Appellant's possession be transferred to the Township; 3) compelling a financial audit of Appellant's books and records; 4) obligating Appellant to pay rent to the Township for use of the two firehouses; and 5) directing Appellant to vacate the firehouses within 30 days. The trial court held a two-day bench trial on December 9-10, 2022, at which it heard testimony from multiple witnesses, including Appellant's President and

3

Assistant Fire Chief, Edward Tutrone; BOS member and long-term member of Appellant, John Kerrick; and Township Fiscal Specialist Gregory Romulus.

Mr. Tutrone testified that he has been affiliated with Appellant for 30 years and that it has 27 active firefighters. Mr. Tutrone explained that Appellant previously had 11 fire vehicles in its possession and that fire vehicles typically cost between $500,000.00 to over $1 million dollars. (R.R. at 96a, 122a.) Mr. Tutrone acknowledged that the Township provided funding through the Fire Tax for the purchase of the fire vehicles. (R.R. at 97a, 120a.) Mr. Tutrone also indicated that Appellant receives tax revenue from the Commonwealth of Pennsylvania in the form of the Foreign Fire Tax,[4] which is used to fund fire safety training and equipment. (R.R. at 120a-21a.) Mr. Tutrone stated that when Appellant removed itself from service in August of 2022, no Township funds remained in Appellant's bank accounts, although he acknowledged that no audit had been conducted to confirm his belief. (R.R. at 138a.) Mr. Tutrone explained that Appellant typically sold the old fire vehicles in its possession and that it retained the proceeds from these sales. (R.R. at 98a.)

Mr. Tutrone averred that the two 2007 Ford Utility trucks in Appellant's possession were not purchased using Fire Tax revenue, as one truck was purchased using Federal Emergency Management Agency funds and the second truck with Appellant's own funds. (R.R. at 99a-100a.) Mr. Tutrone testified that Fire Tax revenue was used only for vehicle purchases and that, in addition to the 2007 Ford Utility trucks, a 1991 International Sport was acquired without any use of tax revenue. (248-49a.) He further testified with respect to a 2021 Pierce Ariel truck that the down payment of

---

[4] "The Foreign Fire Tax is a tax levied by the Commonwealth of Pennsylvania by foreign fire insurance companies doing business in Pennsylvania and administered by the Pennsylvania Auditor General's office." (Trial Ct. Op., 1/23/24, at 5.) "The funds are sent annually to municipalities which are required to distribute them to fire companies in their jurisdiction within sixty days of their receipt of the funds." *Id.*

4

$750,000.00 was funded by $250,000.00 in Fire Tax revenue, with the balance covered by Appellant's general fund and donations from another municipality. (R.R. at 250a.) Mr. Tutrone explained that Appellant pays the monthly debt service of $1,800.00 per month for that vehicle. (R.R. at 275a.)

John Kerrick testified both as a long-term serving member of the BOS and as a lifetime member of Appellant, affiliated with it since the late 1970s. (R.R. at 200a-201a.) Mr. Kerrick explained that title for the fire vehicles are held by Appellant, rather than the Township, because in the 1980s the Township assisted Appellant in obtaining a low interest loan offered by the state. Appellant paid the loan with funds it received from the Township, and, in Mr. Kerrick's view, the parties assumed that the Township owned the vehicles. (R.R. at 204a-05a.) Mr. Kerrick expressed that to his knowledge, there was never a formal agreement between the parties relating to the vehicles' titles and that the parties shared a mutual understanding that ownership rested with the Township. (R.R. at 206a.) Mr. Kerrick relayed that the Fire Tax was implemented after Appellant solicited the BOS to allow it to purchase a relatively new fleet of vehicles over time. (R.R. at 208a.) He explained that the titling of the vehicles was never an issue until Appellant took itself out of fire service and that the parties had a strong relationship until that point. Mr. Kerrick further indicated that the Township has paid "every conceivable expense" related to the fire vehicles, including gasoline, insurance, and firehouse occupancy. (R.R. at 210a.)

On cross-examination, Mr. Kerrick acknowledged that Appellant's firefighters did not receive salaries or benefits for their volunteer service and that their work was done on their time at their expense. (R.R. at 218a.) He also agreed that the service Appellant provided to the Township saved it a lot of money because it did not have payroll and benefits expenses. (R.R. at 219a-20a.)

Fiscal Specialist Geroge Romulus testified that he is responsible for all of the Township's financial records and that the Fire Tax revenue had been distributed to Appellant and Pines Summit at a 83% to 17% split, in Appellant's favor. (R.R. at 164a.) He explained that the Foreign Tax from the state amounted to $80,000.00 per year and was distributed between the two fire companies at the same percentage rate. (R.R. at 166a.) Mr. Romulus reported that the Fire Tax generates $230,000.00 per year and that the Township has funded Appellant's vehicle maintenance, repairs, communication control center, dispatch services, workers' compensation insurance, liability insurance, and electric and natural gas fees, along with a myriad of other expenses. (R.R. at 167a, 169a-71a.) Mr. Romulus advised that between 2013 and 2022, Appellant received $3,114,508.00 in financial assistance from the Township. (R.R. at 182a.)

At the conclusion of trial, the trial court took the matter under advisement pending the submission of briefs by the parties. On July 19, 2023, the trial court entered its verdict in favor of the Township and against Appellant, in which it granted the Township's request that all vehicles, vehicle titles, and equipment in Appellant's possession, with the exception of two 2009 Ford Utility vehicles, be transferred to the Township within 30 days; compelled a financial audit of Appellant's books and records; and ordered Appellant to vacate the Township firehouses within 30 days.[5] The

---

[5] The order read in pertinent part:

> [The] Township's request that **all vehicle titles and equipment** be transferred to the Township by [Appellant] and **all vehicles** turned over to the Township is GRANTED in part as follows:
>
> a. [Appellant] shall retain ownership and legal title to the two 2007 Ford Utility vehicles currently in its possession.

**(Footnote continued on next page…)**

6

trial court denied the Township relief in all other respects. Appellant filed a motion for post-trial relief on July 31, 2023,[6] which the trial court denied by order and opinion entered January 23, 2024. This appeal from the trial court's verdict, docketed at No. 1012 C.D. 2024, followed. Appellant filed a Concise Statement of Errors Complained of on Appeal on September 16, 2024, and the trial court entered an opinion on November 4, 2024. *See* Pa.R.A.P. 1925(a)-(b).

### Appeal Concerning Contempt and Sanctions Proceedings
### Docketed at No. 1126 C.D. 2024

In the interim, on August 22, 2023, the Township filed a motion for contempt and sanctions against Appellant for its failure to comply with the trial court's

---

b. **All titles to the remaining balance of vehicles and equipment** in the possession of [Appellant] shall be transferred to [the] Township within twenty (20) days of this Order and said vehicles and equipment shall be relinquished to [the] Township within thirty (30) days of this Order.

3. [The] Township's request that a financial audit be conducted on the books and records of [Appellant] is GRANTED. A financial audit shall be performed on all the financial books and records, and at the Township's expense, to determine if any funds of the Township were held by [Appellant] as of August 31, 2022. The Township, depending upon the audit results, may hereafter petition the [trial c]ourt for additional relief.
. . . .

5. [The] Township's request that Tobyhanna Township [Appellant] be ordered to vacate the firehouses it occupies within thirty (30) days following this Order is GRANTED. [Appellant] shall vacate the firehouse premises in Pocono Pines, Pennsylvania as well as the firehouse premises in Blakeslee, Pennsylvania within (30) days of the filing of this Order and such premises are to be left in a clean condition.

(Order, 7/19/23) (emphasis added).

[6] *See* Pa.R.Civ.P. 227.1(c)(2) (providing that post-trial motions must be filed within ten days after the filing of a decision in the case of a trial without jury).

7

July 19, 2023 order, based primarily on the stripping of equipment from the fire vehicles before they were transferred to the Township. The trial court held a hearing on December 18, 2023, at which it heard testimony from multiple witnesses, including Mr. Tutrone, Fire Chief Troy Counterman, and BOS member Joseph Colyer.

Regarding transfer of the fire vehicles, Mr. Tutrone testified that he received a letter from the Township on the morning of August 5, 2023, requesting that the "fire vehicles be transferred [] 'as is,' with no alterations or removal of fixtures or equipment as claimed by [Appellant]." (R.R. at 422a.) The letter further advised that "[Appellant] can provide the Township with a list of items claimed to be independently owned by [it] along with an invoice from the purchase [and the parties can discuss] options at that juncture." (R.R. at 423a.) Mr. Tutrone acknowledged that he participated in stripping the fire vehicles along with several other firefighters later that day and explained that they were acting as a "totally separate corporation . . . as Fire Relief Association members and not as firefighters." (R.R. at 426a, 428a.)[7] He testified that Appellant's Fire Chief, Troy Counterman, organized the removal of the equipment and sent out a group text to firefighters on August 5, stating: "There will be an urgent work session today at noon starting in the Pines Station to start removing equipment. Bring empty trucks and trailers if you have them." (R.R. at 427a.)

Mr. Tutrone additionally testified that the Fire Relief Association made the decision to remove the equipment from the fire trucks before the trial court issued its order and that the lenses of the video cameras located inside of the fire department were covered with tape during the process. He further stated his belief that the removal process was consistent with the trial court's injunctive order, because no equipment purchased with Tax Fund revenue was removed. (R.R. at 432a-33a.) Mr. Tutrone

---

[7] The Township Volunteer Fire Relief Association referenced in this testimony was never a party to this action.

explained that Appellant could not transfer the equipment to the Township because it was owned by the Fire Relief Association, a separate corporation, and Appellant "could incur criminal and civil penalties from the Auditor General," as the equipment was acquired using relief funds. (R.R. at 425a, 436a.)

Mr. Counterman testified that he participated in removing equipment from the firetrucks and that he was aware that firehouse video camera lenses were covered with tape during the two-day removal process. (R.R. at 460a-62a.) He explained that the decision to strip the vehicles was made because the fire company did not own the equipment, which was purchased with relief funds. (R.R. at 463a.) Mr. Counterman relayed his belief that the trial court's injunctive order authorized the Fire Relief Association to remove equipment from the vehicles because "the court order specifically [applied to equipment purchased with] Fire Tax Revenue." (R.R. at 463a.)

Mr. Colyer testified regarding the costs of reinstalling the equipment that was stripped from the fire vehicles and repairing the damage to the Fire Chief's vehicle, and he relayed that he spent weeks talking to suppliers and other fire departments to assess the expenses. (R.R. at 489a-91a.) Counsel for Appellant objected to this testimony, and the following exchange took place:

> [Counsel for Appellant]: Objection, Your Honor. This information is all based on hearsay. He talked to suppliers, he talked to the volunteer fire companies, he talked to other people. And he's not – he's not been qualified as an expert who could take hearsay into account in formulating an opinion.

> [Counsel for the Township]: Judge, . . . . He didn't tell us what [the suppliers] said. He didn't tell us what other fire companies said. What he said was very carefully is the leg work that he did to come up with a number on what it's going to cost to replace the equipment that the Volunteer Fire

9

Company stripped.

THE COURT: I'm going to overrule the objection. You're going to have a right to cross him as well. I mean, I understand the objection but I'm going to overrule it.
. . . .

Q. Mr. Colyer, based upon the leg work that you did, the investigation that you just discussed, were you able to arrive at an amount that quantified what it's going to cost to take the equipment that was stripped from those fire vehicles and put them back?

A. If all of the bracketry and all of the hardware is installed, it would bring the number down significantly. We don't know that. So if all of the hardware and all the bracketry is returned, it would be 20 to 40 thousand. If it's not, it could be upwards of 45 to 60,000.

Q. And that's per vehicle?

A. Per vehicle.

(R.R. at 491a-93a.)

On cross examination, Mr. Colyer indicted that he did not obtain estimates regarding the repair work because he priced the equipment and then factored in the labor. (R.R. at 493.) Mr. Colyer stated that although he was a member of Appellant for a short period of time several years ago, he was not personally familiar with the specific equipment contained in each particular vehicle. (R.R. at 495a-96a.)

At the conclusion of the hearing, the trial court took the matter under advisement pending the submission of briefs by the parties. On July 22, 2024, the trial court issued an opinion and order granting the Township's motion in part and denying it in part stating:

10

1. [The Township] motion is GRANTED in part, and DENIED in part.

2. [Appellant] is found to be in contempt of this Court's Order dated July 19, 2023 by [its] willful, knowing, and wrongful non-compliance and violation of such Order by [Appellant's] removal of the equipment from the vehicles relinquished to [the Township] under such Order.

3. As sanctions for such contempt, and to enable it to purge itself of such contempt, [the Township] shall comply with the following:

A. [The Township] shall within twenty (20) days of the entry of this Order fully return the equipment removed from said vehicles, including but not limited to all hoses, breathing apparatuses, hydraulic tools, hydraulic motors, radio equipment, and all bracketry and hardware, to a location determined by [Appellant] through correspondence between counsel for the parties.

B. [Appellant] shall within ninety (90) days of the entry of this Order, pay the sum of $180,000.00 to [the Township] to compensate [Appellant] for the expense of remedying the damage to the cited vehicles and otherwise remedying the reattachment of such equipment to the cited vehicles.

(Order, 7/22/24.)

This appeal from the trial court's order, docketed at No. 1126 C.D. 2024, followed. Appellant filed a Concise Statement of Errors Complained of on Appeal on November 22, 2024, and the trial court entered an opinion on November 25, 2024. *See* Pa.R.A.P. 1925(a)-(b).

**The Township's Motion to Quash**

In its motion to quash, the Township contends, "Appellant's appeal to this Court on Docket Number 1012 C.D. 2024 should be quashed because it failed to file Post-Trial motions within 30 days of the trial court's verdict and prosecute the same on

11

issue development in accordance with Pa.R.C[iv.]P. 227." (Motion to Quash, at ¶ 10.) The Township also maintains that Appellant is improperly attempting to address issues raised in the bench trial in conjunction with the subsequent appeal concerning contempt and sanctions. We disagree.

Specifically, as outlined in the procedural background above, Appellant **did file** a post-trial motion challenging the trial court's verdict on July 31, 2023, in which it preserved all of the issues it now raises on appeal at Docket No. 1012 C.D. 2024 concerning the bench trial. (*See* Appellant's Motion for Post-Trial Relief, 7/31/23, at 2-4;[8] *see also* R.R. at 6a (listing post-trial motion on trial court docket)). Appellant also filed a timely notice of appeal from the trial court's decision. This Court then consolidated the appeals *sua sponte* given the shared history of the cases. Accordingly, because the record reflects Appellant followed appropriate procedures in pursuing this appeal, we deny the Township's motion to quash and proceed with our merits review.

## I. Issues Concerning Injunctive Relief (Docket No. 1126 C.D. 2024)[9]

Appellant raises five issues challenging the trial court's grant of injunctive relief. Appellant first argues the trial court erred in imposing a constructive trust over the fire equipment possessed by Appellant, where the Township failed to present any evidence directly linking acquisition of the equipment to Fire Tax revenue.

---

[8] This document is included in the original record, but not in the reproduced record.

[9] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Slack v. Slack*, 256 A.3d 472, 477 n.9 (Pa. Cmwlth. 2021). "It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence." *Id.* at 481. To the extent this appeal involves statutory interpretation, our standard of review is *de novo*, and our scope of review is plenary. *In re Borough of Downingtown*, 161 A.3d 844, 870 (Pa. 2017)

(Appellant's Br. at 17-20.) Appellant also asserts trial court error in imposing a constructive trust on two specific vehicles, the 1991 International Sport and the 2021 Pierce Aerial Vehicle, where the evidence demonstrated these vehicles were not acquired using Fire Tax revenue. *Id.* at 27-29. Additionally, Appellant contends the trial court, in imposing the constructive trust, disregarded the many hours of volunteer firefighting and other emergency services Appellant provided at no cost to the Township. *Id.* at 20-23. Lastly, Appellant maintains the trial court's imposition of the constructive trust is violative of its rights under Section 5547(a) the Nonprofit Corporation Law of 1988 (Nonprofit Corporation Law),[10] as it remains capable of fulfilling its corporate and charitable purpose of responding to fire emergencies outside of the Township. *Id*. at 23-27.[11]

## Discussion

### Constructive Trust Over Fire Equipment

As noted, Appellant first challenges the trial court's imposition of a constructive trust over the fire equipment, where there was no evidence definitely linking Fire Tax funds to acquisition of the equipment. Appellant argues Mr. Tutrone's testimony conclusively established that Fire Tax revenue was used to purchase vehicles only, not equipment. Appellant additionally maintains the trial court's inclusion of all equipment in its possession in its transfer order, without identifying each piece of equipment, directly contradicts its own Finding of Fact (FOF) No. 29, stating: "The

---

[10] Section 5547(a) of the Nonprofit Corporation Law provides in relevant part: "(a) General rule.--Every nonprofit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles." 15 Pa. C.S. § 5547(a).

[11] We have reordered Appellant's issues for ease of disposition.

Fire Tax was for equipment and vehicle replacement and is only used for [Appellant's] vehicles." (Trial Ct. Op. 7/21/23, FOF No. 29.)

To begin, we observe that "a constructive trust is an equitable remedy that is designed to prevent unjust enrichment." *Williams Township Board of Supervisors v. Williams Township Emergency Company*, 986 A.2d 914, 922 (Pa. Cmwlth. 2009). "A constructive trust arises where a person holds title to a property subject to an equitable duty to convey it to another on the ground that he or she would be unjustly enriched if permitted to retain it." *Altman v. Kyler*, 221 A.3d 687, 711 (Pa. Cmwlth. 2019). "Before a constructive trust can be imposed, however, the owner of the property must have acquired title to such property in a manner that created an equitable duty in favor of the person benefiting from the trust." *Id.*

Additionally, to establish unjust enrichment, a party must show: "(1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Williams Township Board of Supervisors*, 986 A.2d at 923. This is a fact-specific inquiry, and in assessing whether the doctrine applies, our focus is not on the parties' intent but rather on whether the defendant has been unjustly enriched. *Id.*

Instantly, we first address Appellant's argument that the trial court's injunctive order directly contradicts the court's own FOF No. 29, which Appellant claims excluded fire equipment from the constructive trust. (*See* Trial Ct. Op. 7/21/23, FOF No. 29, reading: "The Fire Tax was for equipment and vehicle replacement and is only used for [Appellant's] vehicles."). We reject this argument out of hand, because a review of the trial court's opinion **in its entirety** shows that Appellant's interpretation

14

of FOF No. 29 is nothing more than a self-serving cherry-picking of the court's findings, where the preceding paragraphs cover the equipment and provide:

> 20. **The funds raised through the [Township] fire tax were designated annually to [Appellant]** and the other officially recognized fire company, Pocono Summit Volunteer Fire Company, **for the acquisition of firefighting apparatus and equipment**.
>
> 21. The Township provided funds for [Township] vehicles and **equipment through the fire tax as well as other means**.

*Id.*, FOF Nos. 20-21 (emphasis added). Thus, Appellant's contention based on FOF No. 29 is plainly belied by the record.

Further, in addressing Appellant's argument that the equipment was excluded from the transfer order, the trial court explained:

> This runs particularly contrary to the evidence presented at the hearing. Once again, the Township provides for, by and through the Fire Tax revenue, virtually all costs associated with operating a Fire Company. **This includes the equipment associated with and affixed to the vehicles**. The court makes a minor exception to the previously noted two 2007 Ford Utility vehicles.
> . . . .
>
> **[I]t is clear to this [c]ourt that [Appellant] would be unjustly enriched if they are permitted to keep vehicles and titles to such vehicles purchased primarily by the Township's residents through taxes since the residents are no longer receiving a continuing benefit from [Appellant] or the vehicles. A constructive trust was properly established to transfer the legal title and possession of such vehicles and equipment to the Township.** The [c]ourt, finding that [Appellant] will be unjustly enriched if it is permitted to keep the vehicles

> primarily funded by the residents of the Township, finds []
> the Township and it residents are the rightful owners of these
> vehicles and equipment, with the exception of the two 2007
> Ford Utility vehicles.

*Id.* at 9, 11-12 (emphasis added).

We agree with the trial court's determination and emphasize that while Appellant directs this Court to Mr. Tutrone's testimony in arguing a result to the contrary, the trial court, as factfinder was "free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence." *Slack*, 256 A.3d at 477 n.9. It was therefore well within the trial court's province to not credit Mr. Tutrone's testimony in this regard.

Moreover, our review of the record makes clear that the Fire Tax was implemented for the purpose of generating revenue for the volunteer fire companies serving the Township to purchase equipment in addition to vehicles, with the 1985 referendum reading: "Do you favor an additional one (1) mill real estate tax, **for the purpose of purchasing fire-fighting apparatus** and fire-fighting vehicles for the [Appellant] and [] Pocono Summit?" (R.R. at 43a) (emphasis added). The testimony of Township witnesses Mr. Romulus and Mr. Kerrick at the bench trial demonstrated that this purpose was fulfilled, as they averred that the Township provided Appellant with over three million dollars in financial assistance over an approximate 10-year period and that the Township paid for "every conceivable expense" related to Appellant's use of the fire vehicles purchased by the Township. (R.R. at 182a, 210a.) Permitting Appellant to retain the equipment paid for with Township taxpayer dollars, despite its voluntary withdrawal from its official service, would lead to an unjust result, thus necessitating the trial court's creation of a constructive trust over the equipment. Accordingly, based on the foregoing, we conclude Appellant's first issue merits no relief.

**Constructive Trust over International Sport and Pierce Aerial**

We next address the 1991 International Sport and the 2021 Pierce Aerial vehicles, which Appellant contends should be excluded from the constructive trust. (Appellant's Br. at 27-29.) Appellant maintains that because Mr. Tutrone's testimony established that the International Sport was not purchased using any Fire Tax revenue and the Pierce Ariel purchase was funded only in part by the Township, with substantial contributions from another municipality and from Appellant's general fund, these two vehicles must remain in its possession. In making this argument, Appellant characterizes the trial court's decision as inconsistent, because the court credited Mr. Tutrone's testimony regarding the two Ford Utility Trucks Appellant was permitted to retain but disregarded his testimony concerning the International Sport and Pierce Aerial.

The trial court rejected this argument, indicating that Appellant presented no documentary evidence corroborating Mr. Tutrone's testimony that the vehicles were purchased using funds independent of Fire Tax revenue. (Trial Ct. Op., 1/23/24, at 12.) As to the trial court's assessment of Mr. Tutrone's testimony regarding the various vehicles, we reiterate that arguments going to the credibility and weight of the evidence are issues within the sole province of the trial court, which was "free to believe all, part, or none of the evidence." *Peters Township v. Snyder*, 305 A.3d 228, 236 (Pa. Cmwlth. 2023). We will not disturb its credibility determinations on appeal. *See id.* Accordingly, we conclude that Appellant's argument to the contrary merits no relief.

**Value of Services Argument**

Appellant next maintains the trial court, in imposing the constructive trust, disregarded the many hours of volunteer firefighting and other emergency services Appellant provided at no cost to the Township. (Appellant's Br., at 20-23.) Appellant

claims the trial court ignored the unique factual circumstances of the case in finding unjust enrichment, and points to Mr. Kerrick's testimony acknowledging the savings realized by the Township due to the service of Appellant's firefighters, who did not receive benefits or pay.

In making this argument, Appellant essentially seeks to rehash its prior argument in this appeal concerning the trial court's finding of unjust enrichment, which we have already determined to be meritless. Appellant directs us to no legal authority supporting its value of services argument, nor is there any indication in the record that the trial court did not consider the totality of the evidence presented at trial in rendering its decision that imposition of a constructive trust was necessary to prevent unjust enrichment under the particular circumstances of this case. As such, Appellant is entitled to no relief on this claim.

### Appellant's Charitable Status

Appellant next challenges the trial court's imposition of a constructive trust as violative of its rights under Section 5547(a) of the Nonprofit Corporation Law. (Appellant's Br., at 23-27.) Appellant maintains that it has a statutory right to possession of the fire vehicles and equipment because it continues to fulfill its corporate and charitable purpose of "fighting fires and [protecting] property from demolition and destruction by fire," as stated in its charter. (R.R. at 30a.) While Appellant concedes that the Township provided funds to purchase the vehicles through Fire Tax revenue, it emphasizes the fact that the vehicles were titled in its name only.

Section 5547 of the Nonprofit Corporation Law provides in pertinent part:

Every nonprofit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as **may be given, devised to, or otherwise vested** in such corporation, **in trust**, for the purpose or purposes set forth in its articles.

18

15 Pa. C.S. § 5547(a) (emphasis added).  Thus, under the plain language of the statute, a nonprofit corporation holds "in trust" only real or personal property that was "given, devised to, or [] vested" in it from another source.  In considering Appellant's argument based on Section 5547, the trial court explained:

> The record reflects the Township gave substantial funds through the Fire Tax to [Appellant] for the purchase of vehicles but the vehicles were titled in the name of [Appellant], not the Township after an instance where the Township helped [Appellant] secure a loan for vehicles in the late 1970s.  It is undisputed that during this time [Appellant] was the primary responder to fires and emergencies in the Township, providing countless hours of volunteer firefighting and other emergency services at no cost to the Township. [Appellant] argues this is an exchange of benefits and therefore it is the rightful owner of the vehicles and titles to such.  The Township presented testimony of John Kerrick, a current member of the [BOS] for the Township.  He has been affiliated with [Appellant] since the late 1970s. His testimony was that starting in the late 1970s and early 1980s the titles for vehicles were just in [Appellant's] name, not the Township's name.  The change in titling of the vehicles occurred after the Township secured a loan for vehicles for [Appellant]. He further testified that **it was always the understanding of the Township and [Appellant] that residents were the owners of the vehicles. Prior to this and until the passing of the ordinance the Township has secured loans for [Appellant's] vehicles and paid the loans for these vehicles. During the time period [Appellant] was fighting fires within the Township it was the trustee of the vehicles holding title for the benefit of the Township and its residents.  Since [Appellant] is no longer providing firefighting services within the Township, by their own voluntary choice, they are no longer the trustee of these vehicles for the Township's benefit**.

19

It is important to note that [Appellant] attempts to liken a set of cases where it was determined that although the Volunteer Fire Companies were taken out of service the Courts found that their charitable purpose could still be fulfilled and therefore the township's action to seize the assets subject to the suits were improper. *See Bethlehem Borough v. Perseverance Fire Company*, 81 Pa. 445, 458 (1876); *see also In re Independent Fire Company No. 9*, 2020 Pa. Cmwlth. Unpub. LEXIS 86 *11 (Pa. Cmwlth. 2020), *Lacey Park Volunteer Fire Company No. 9 v. Board of Supervisors*, 27 Pa. Cmwlth. 5t, 158, 365 A.2d 880, 882 (1976). All of the cases cited by [Appellant] indicate a township removing the volunteer fire company from operation, or in other words, decertifying them to provide services. Here, the fact presented are in stark contrast. [Appellant] voluntarily removed themselves from service, remarking that if the ordinance was adopted, they would no longer be servicing the Township. This is critical because the [Appellant] rendered their charitable purpose inert.

**It is clear to this [c]ourt the [Appellant] would be unjustly enriched if they are permitted to keep vehicles and titles to such vehicles purchased primarily by the Township's residents through taxes since the residents are no longer receiving a continuing benefit from [Appellant] or the vehicles**. A constructive trust was properly established to transfer legal titled and possession of such vehicles and equipment to the Township.

(Trial Ct Op., at 10-12) (emphasis added).

Upon review, we agree with the trial court's well-reasoned analysis and adopt it as our own. The record reflects that the fire vehicles were titled in Appellant's name for the sole purpose of securing optimal financing, and that the parties had not been concerned about this formality in the past because of their strong, amicable relationship. The Township never "gave[], devised to, or [] vested" the fire vehicles and equipment in Appellant, thus removing the property from the ambit of Section

20

5547. *See* 15 Pa. C.S. § 5547(a). Furthermore, Appellant **voluntarily chose** to discontinue formalized service with the Township, while simultaneously claiming ownership of property paid for by Township residents to protect them in emergencies. Based on the foregoing, we agree with the trial court that imposition of a constructive trust was necessary and Section 5547(a) does not operate to shield the property from transfer.

## II. Issues Concerning Trial Court's Finding of Contempt and Imposition of Sanctions at Docket No. 1126 C.D. 2024

Appellant raises two issues at Docket No. 1126 C.D. 2024, in which it challenges the trial court's finding of contempt and its admission of the testimony of lay witness Joseph Colyer, which it claims constituted hearsay. We will address these issues in turn.

## Discussion
## Trial Court's Finding of Contempt

Appellant first argues the evidence presented at the contempt proceedings failed to show it willfully violated an unambiguous court order because the language of the order did not identify the equipment at issue, and the equipment removed from the vehicles was not purchased with Fire Tax revenue. (Appellant's Br., at 29-34.)[12]

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt, which has long been recognized as the appropriate means by which a court may compel compliance with its orders." *County of Fulton v. Secretary of Commonwealth*, 292 A.3d 974, 1003 (Pa.

---

[12] "Our scope of review when considering an appeal from a contempt order is limited to whether the trial court abused its discretion or committed an error of law." *West Pittston Borough v. LIW Investments, Inc.*, 119 A.3d 415, 421 n.9 (Pa. Cmwlth. 2015). "When considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge." *Id.*

21

2023). "[I]n civil contempt proceedings the burden is on the complaining party to prove noncompliance by a preponderance of the evidence." *Id.* at 1004. "The corollary of this proposition is that the order which is said to have been violated must be specific and definite." *Id.* "Mere noncompliance with a court order is not by itself sufficient to prove contempt; rather, the complaining party must prove: (1) That the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) That the act constituting the contemnor's violation was volitional; and (3) That the contemnor acted with wrongful intent." *Id.* "Civil contempt may be proved by circumstantial evidence and logical inference from other facts." *Waggle v. Woodland Hills Association, Inc.*, 213 A.3d 397, 403 (Pa. Cmwlth. 2019). "[W]hen making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order." *County of Fulton*, 292 A.3d at 1058.

The trial court determined that Appellant's actions in stripping equipment from the vehicles rose to the level of civil contempt and explained:

> [T]he ultimate issue is whether [Appellant] is in contempt of this court's Order dated July 19, 2023 by its violation of such Order in not returning the equipment with the vehicles that [Appellant] relinquished to the Township on or near August 18, 2023.
>
> Initially, it is clear that Tutrone and the members of [Appellant] had notice of the court's order, dated July 19, 2023. Tutrone, the president of [Appellant], admitted to his receipt of such Order. He testified that he read the court's Findings of Fact, Opinion and Order. He further stated the attorney representing [Appellant] corresponds with him quickly. Further, the language of the July 19, 2023 Order was also definite, clear, and specific. **By the plain terms of the**

22

**July 19, 2023 Order, there can be no doubt that [Appellant] was aware that it could not remove the equipment from the vehicles before relinquishing them to the Township.**

**Moreover, the cited Order did not contain any qualifications or distinctions such as requiring only 'Township taxpayer funded' equipment to be returned with the vehicles at issue**. The notice and specificity elements of civil contempt were satisfied by [the Township] by ponderance of the evidence.

. . . .

The testimony and evidence clearly shows that [Appellant's] actions were volitional. It is undisputed in this case from the testimony of Tutrone and Counterman that [Appellant] acted volitionally when, starting on August 5, 2023, [Appellant] removed the equipment from the subject vehicles before relinquishing the vehicles to the Township. As for the wrongful intent prong of a civil contempt finding, the testimony of Tutrone and Counterman in context with the other evidence also shows that [Appellant] acted with the requisite mental state. Initially, the Court finds the testimony of Tutrone and Counterman without credibility, particularly as to their claims that the removal of the equipment from the cited vehicles was done as such equipment was owned by the Association, as was their testimony that the meeting Tutrone, Counterman and other individuals attended on August 5, 2023 to strip vehicles was a meeting of Association members. Their further explanation during the testimony for the removal of equipment to protect [Appellant] from potential sanctions from the Auditor General also strikes the Court as incredulous. The evidence also revealed, in essence, [Appellant's] efforts to work in a cloak of secrecy in performing the stripping of the vehicles done upon an expedited basis.

The [c]ourt from the evidence also infers [Appellant's] actions in removing the equipment was also an effort to spite the Township as a consequence of the partial injunctive relief

being granted in the Township's favor. This evidence included the letter dated August 5, 2023 from the Township's counsel, which was forwarded to [Appellant] by its counsel the morning before the equipment removal occurred, clearly notifying [Appellant] that the Order in question did not make any distinction about the equipment at issue.

Finally, the [c]ourt infers the testimonial claims by Tutrone and Counterman that the removal of the equipment was done since such equipment was owned by the Association was contrived by viewing the record in this matter. The reason therefore is the evidence reveals that **at no point from the time the Township filed its complaint for injunctive relief on August 25, 2022 through nearly a year later, on August 4, 2023, the day prior to the vehicle stripping, did [Appellant] or its counsel ever advance this contention or file any type of motion or pleading with such assertion**.

In sum, the Township met its burden, showing by a preponderance of evidence that [Appellant] was on notice of this [c]ourt's July Order and that [Appellant] violated the Order with volition and with wrongful intent.

(Trial Ct. Op., 7/22/24, at 11-13) (emphasis added).

We agree with the trial court and conclude there is no ambiguity in the language of the injunctive order which clearly directed, without qualification, transfer of "all vehicle titles and equipment" in its possession with the sole exception of the two 2007 Fords. (Trial Ct. Order, 7/19/23). A common sense reading of the record also fully supports the trial court's determination that Appellant acted with wrongful intent in willfully violating the order, where the firefighters who stripped the vehicles acted in an urgent, coordinated effort to render the vehicles useless on the eve of title transfer, even covering the firehouse video camera lenses with tape in an attempt to hide their actions. Accordingly, Appellant's first issue merits no relief.

24

## Admissibility of Joseph Colyer's Testimony

Lastly, Appellant contends the trial court erred in admitting the testimony of BOS member Joseph Colyer regarding the costs of repairing the fire vehicles and reinstalling the equipment, where he was not qualified as an expert witness and his testimony constituted inadmissible hearsay. *Id.* at 34-35.

However, this issue is waived, as Appellant's single-paragraph argument in its appellate brief wholly omits any discussion of pertinent legal authority and lacks any substantive development of a legal argument, in contravention of our Pennsylvania Rules of Appellate Procedure. In its brief, Appellant does not explain or even set forth the general rule against court admission of hearsay testimony. *See* Pa.R.E. 801-04 (relating to hearsay). Appellant also fails to identify for this Court the primary rule of evidence pertinent to this issue, *i.e.*, Pennsylvania Rule of Evidence 701 (permitting lay witness to provide opinion testimony subject to specific criteria). It is axiomatic that an appellant must support its claims on appeal with citation to and discussion of relevant legal authority under consequence of waiver. *See* Pa.R.A.P. 2101, 2119(a)-(c). Because Appellant has raised an issue without discussing legal support therefore, we are unable to provide meaningful appellate review of its argument on appeal. *Sudduth v. Commonwealth*, 580 A.2d 929, 931 (Pa. Cmwlth. 1990) (declining to reach merits of issues where appellant posited questions without providing legal discussion, thereby depriving this Court of ability to provide meaningful appellate review). "This Court will not act as counsel [for an appellant] or develop arguments on its behalf." *County of Allegheny v. Marzano*, 329 A.3d 715, 727 n.6 (Pa. Cmwlth. 2024). Accordingly, Appellant has waived its final issue on appeal.[13]

---

[13] Our review is also hindered by the fact the trial court did not address this issue in its opinions. (*See* Trial Ct. Ops., 7/22/24, 11/25/24).

25

Moreover, we note that in overruling Appellant's objection to Mr. Colyer's testimony, the trial court indicated that counsel would have the right to question the witness regarding his cost of repair methodology. The record reflects that counsel took full advantage of this opportunity during cross-examination by carefully questioning Mr. Colyer about his estimate process. Therefore the record demonstrates that the trial court, as fact-finder, was well aware of any limitations of Mr. Colyer's testimony in assessing its content and credibility. Appellant's final issue merits no relief.

### III. Conclusion

In sum, for the foregoing reasons, we affirm the orders on appeal at Docket Nos. 1012 C.D. 2024 and 1126 C.D. 2024, as no relief is due.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Wolf did not participate in the decision for this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| Tobyhanna Township | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 1012 C.D. 2024 |
| | : | |
| Tobyhanna Township Volunteer | : | No. 1126 C.D. 2024 |
| | : | |
| Fire Company, | : | |
| Appellant | : | |

## *ORDER*

AND NOW, this 2nd day of January, 2026, the motion to quash filed by Tobyhanna Township is hereby DENIED. The orders entered by the Court of Common Pleas of Monroe County on July 19, 2023, and July 22, 2024, at the above-captioned docket numbers are hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge